GEORGE A. BERLINGHOF, APPELLANT, V. LINCOLN COUNTY, APPELLEE.

FILED NOVEMBER 27, 1934. No. 29032.

*Mockett & Finkelstein* and *James T. Keefe,* for appellant.

*William E. Shuman* and *C. S. Beck, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY and PAINE, JJ., and RAPER, District Judge.

RAPER, District Judge.

George A. Berlinghof, plaintiff, brought this action against Lincoln county, and bases his right to recovery on a written contract entered into by him and Lincoln county for services as an architect in the construction of a new courthouse for Lincoln county.

In his petition, filed December 15, 1932, he alleges that on July 22, 1919, Lincoln county voted a five-mill levy to build a new courthouse for Lincoln county, to cost from $225,000 to $250,000, and after that date plaintiff prepared preliminary sketches and elevations for the board's consideration, and that on April 18, 1921, the defendant county employed plaintiff to render services to make plans and specifications and estimates for and superintending as customary for architects for the erection of a county courthouse at North Platte at an estimated cost of $200,000; that, immediately after, the plaintiff prepared plans and specifications for the entire work under direction of the county board, and the courthouse building has progressed in its construction without any substantial deviation from said plans, except certain changes directed by the board, which changes are set out in detail, but are not necessary to be here stated, and he alleges that he prepared all the plans and specifications and superintended the construction of the building as provided for under his contract up to the

time the building operations ceased, and that the defendant county agreed to pay to plaintiff for his services the sum of 3½ per cent. and in addition thereto, for superintending the construction of said courthouse as customary to architects, the sum of 1½ per cent. as set forth in said contract; that the county board requested plaintiff to prepare plans and specifications for the courthouse building on a cost basis of $200,000, including metal and wood furniture, the furniture estimated at $25,000, but was eliminated at the time by the county board, and bids were asked for on the plans and specifications for the construction of the building only, and the plans and specifications for the furniture were approved and held by the county board for future use. The petition then sets forth letting of general contract for a completed courthouse to McMichael Brothers on October 31, 1921, for $174,990, but this was later changed to $148,000, to which was to be added certain alterations which increased the sum to be paid for completed building, and contractors were in six months to complete the building for the original bid of $174,990, and that on February 3, 1922, the county board changed the construction of the building which called for expenditures greater than McMichael Brothers' contract to the amount of $18,853, and some items were not mentioned in the resolution, and neither the copy of the resolution nor the contract gives the cost of the items changed. The petition further alleges that the McMichael Brothers' supplementary and accepted contract amounted to $174,990, and plans and specifications later ordered for extras and additional construction added to McMichael Brothers' last contract, dated December 17, 1931, amounted to $55,736. The items constituting this amount are set out, but it is not necessary to copy them here. It is further alleged that all of said drawings, plans and specifications were and are being used by Lincoln county and were first approved by the county board and accepted by it, and the defendant county has paid out money and

contracted to pay out money on constructions of original contract and additional contracts let by it in the sum of $332,851.09; that, up to the time of letting the final contract for completing the courthouse according to changes and modifications made and authorized by the county board, plaintiff was the architect in charge under his contract with the county, but the present county board, in violation of plaintiff's contract, employed one C. C. Coursey as architect and superintendent and permitted said Coursey to use the plaintiff's original plans and specifications in order for him to prepare his own drawings, plans and specifications, but defendant county refuses to pay plaintiff the contract price thereof of 3½ per cent. for their preparation, and plaintiff alleges there is due to him on his said contract $4,327.48. It is further alleged that, in regard to the 5 per cent. levy voted in July, 1919, to build a courthouse to cost from $225,000 to $250,000, the funds raised thereby in the years 1919, 1920, 1921, 1922, and 1923 amounted to $178,690.68, and that claims connected with the building were paid out of the county general funds in the sum of $35,313.53. (It is not stated when these sums were paid.) That plaintiff was paid $4,000 out of the said 5 per cent. levy, and the sum of $6,461.34 was paid to him out of the judgment funds of said county, and that in August, 1931, a further levy was made by Lincoln county, as follows: 9/10 of a mill for the year 1931, 1 mill for 1932, and 7/10 of a mill for 1933, to be used in completing the courthouse, which levy is expected to produce about $80,000. On the 14th day of December, 1931, plaintiff filed claim for his services with the county clerk, which was disallowed by the county board on December 5, 1932, and from which disallowance plaintiff duly appealed to the district court. The claim filed by plaintiff is as follows:

"To professional services rendered as follows:

1. On money expended to date $206,269.88
   Five per cent. of same             $10,313.49

2. Three and one-half per cent. on estimated
cost of writer to finish building    $125,000
      Three and one-half per cent. of same    4,375.00

                           Total  ˋ  $14,688.49
(See credits and dates below) amount paid 10,461.34

Balance due and unpaid George A. Ber-
    linghof from Lincoln county        $4,227.15
    Credits

| Date allowed | Cash Received | Date paid by clerk |
|---|---|---|
| Dec. 20, 1921 | $2,500.00 | |
| May 26, 1927 | 1,500.00 | 6/27/27 |
| Aug. 8, 1927 | 5,000.00 | 8/18/27 |
| Dec. 19, 1927 | 1,461.34 | 12/28/27 |

               $10,461.34"

To this petition the defendant county interposed a general demurrer, which was sustained by the court, and plaintiff electing to stand on his petition, it was dismissed, and plaintiff appealed.

The petition does not state when the contractors were paid the $206,269.88 for the construction of the building, but it was evidently made before the last payment to plaintiff, which was in December, 1927. The petition does not state when, if ever, the contract for the construction of the building was to be completed, nor does it state that the contractors or plaintiff did any work on the building after the last payment made to plaintiff. The petition does not allege when the defendant occupied the building, but in his brief plaintiff says the county has occupied the building since June 1, 1923.

The contract consists of a written proposal of plaintiff and acceptance by the county board, and provides that plaintiff agreed to furnish "complete working drawings, including all 3/4" scale diagrams and all full size detail drawings, also complete specifications for all the different kinds of work and materials entering into or needed in the erection and construction of your new

courthouse building for the sum of three and one-half per cent. and will superintend the construction of the same as customary to architects for the sum of one and one-half per cent., making the sum of five per cent. on the total·cost of the building."

Plaintiff is claiming 3½ per cent. commission on his estimate of $125,000, which it would cost to make the changes, alterations and reparations in the building under the new levy for such purposes in August, 1931, and filed his claim before any contract was let for such alterations, reparations, completing or finishing the building (whichever it may be), because he made the original plans and specifications for the building, and that the county permitted the newly-employed architect to use his plans.

It may fairly be deduced from the petition that in July, 1919, a five-mill levy was voted to erect a new courthouse which produced a fund of $178,690.68, and in April, 1921, the plaintiff and defendant county entered into the contract for plaintiff's services as architect and superintendent, and that he prepared plans and specifications for the building. In October, 1921, a contract was let by the county to McMichael Brothers for the erection of a complete new courthouse, for the sum of $174,990; that there was an outlay by the county for the courthouse of $206,269.88, and for plaintiff's services and commissions he received $10,461.34, which was $147.85 more than 5 per cent. of the sum spent for construction. The last payment he received was on December 19, 1927, and the contractors must have been paid the $206,269.88 before December 19, 1927, or plaintiff could not have computed the amount due for his services. Part of the commissions were paid out of a judgment fund, and it is evident that the judgment and levy to pay the judgment must have been made some time prior to August 8, 1927. The county expended not only the amount of the tax levy, but at least $35,313.53 out of the county general fund in building the court-

house. There is no allegation that any work was done on the building by plaintiff or the county later at least than August, 1927, nor until after plaintiff filed his claim with the county clerk. The plaintiff's brief states that the county has occupied the building since June 1, 1923. In August, 1931, a new levy was made for the years 1931, 1932, and 1933, "to be used in completing the Lincoln county courthouse," which levy was expected to produce about $80,000. The county board employed C. C. Coursey as architect and superintendent for the work to be done under the levy of August, 1931, which plaintiff claims was a breach of his contract (the date of such employment is not given), and the county was using and permitting said Coursey to use all of plaintiff's said drawings, plans and specifications which the county had approved and accepted. On December 14, 1931, plaintiff filed his claim as above herein set out. On December 17, 1931, McMichael Brothers were given a contract for the new construction which added $123,582.09 to the original cost of the building, and plaintiff claims he is entitled to 3½ per cent. commission on the sum of $123,582.09.

These facts indicate quite clearly that the building was constructed as a complete courthouse on or before December, 1927. There is no allegation that the first contract with McMichael Brothers was left unfinished, nor any action taken by the county board that indicated the contemplation of the changes, alterations or reparations or finishing of the courthouse, until August, 1931, when the new levy was made, which was 10 years after the date of plaintiff's contract. Under these conditions it is apparent that the first contract with McMichael Brothers was complete and at an end, and it follows that plaintiff's contract was fully performed by him and Lincoln county on or before December, 1927. That being established, plaintiff has no further claim on the county, and the trial court rightly sustained the demurrer. Plaintiff does not allege that he retained ownership in the

plans and specifications, and the county using or permitting C. C. Coursey to use the plans and specifications does not give the right to his commission for their use.

"An architect ordinarily has no right to the ownership of a plan furnished to, accepted by, and paid for by another, and plans forming an essential part of the building contract, unless proved to be the property of the architect, are deemed to be the property of the employer." 5 C. J. 259.

Further, the county board could not lawfully contract with plaintiff in 1921 to pay him commissions on his plans and specifications at some future and undetermined date, as in this case ten years later. In *Roberts v. Thompson*, 82 Neb. 458, this court held: "A county board is not authorized to levy taxes to pay the expenses of subsequent years, nor to contract with reference to levies of subsequent years, nor to create an obligation which would bind the county to levy taxes in the future, unless authorized by a vote of the electors."

Section 26-116, Comp. St. 1929, makes it unlawful for a county board "to make any contracts for or to incur any indebtedness in any form in payment of any account or claim, nor to make any contracts for or to incur any indebtedness against the county in excess of the tax levy for county expense during the current year; nor shall any expenditure be made, or indebtedness be contracted to be paid out of any of the funds of said county in excess of the amount levied for said fund."

The appellee asserts that under this statute plaintiff was not entitled in any event to receive commissions on any sum in excess of $178,690.68, which was the amount raised by the five-mill levy made in 1929, and which five-mill levy was the maximum amount that could be voted to build the courthouse. It will not be necessary to pass on this question in view of our finding that, when the courthouse was completed and occupied and both the contractor and plaintiff paid therefor, it was a completely fulfilled contract and plaintiff had no further rights to commission for his plans.

Plaintiff has been paid his full commission on the $206,269.88, which the county expended in building the new courthouse, and also the additional sum of $147.85.

The judgment of the district court sustaining the demurrer and dismissing the plaintiff's petition is

AFFIRMED.