433 P.2d 315

Dell S. ASHWORTH and Joe H. Ashworth, dba Ashworth Architects, a partnership, Plaintiffs and Appellants,

v.

Gene GLOVER, dba Genie Boys, Defendant and Respondent.

No. 10679.

Supreme Court of Utah.

Oct. 31, 1967.

Howard & Lewis, Jackson B. Howard, Provo, for appellants.

Richard C. Dibblee, Salt Lake City, for respondent.

HENRIOD, Justice:

Appeal from a no cause judgment, in an action where the plaintiff sued defendant in tort, not quasi-contract, for conversion of plans he had drawn. Reversed, with costs to plaintiff A.

In 1960 A designed a drive-in restaurant for one Allen, who paid the former for his services. Allen thereafter expanded his business and built another drive-in, essentially identical in structure and design, save for plot and minor other changes,— within a radius of about 30 miles on a through highway. Allen continued to use A's plans and his supervision of construction. On the occasion of the first unit's construction, A delivered one set of plans to Allen, and about 14 sets to contractors and subcontractors interested in bidding on certain phases of the construction.

It is interesting to note that the specifications so delivered were titled "Information for Bidders" and that the very first paragraph thereof was entitled "General Conditions," and stated that "The latest edition of the 'General Conditions of the Contract for the Construction of Buildings,' as approved by the American Institute of Architects *is a part of these specifications.* Copies of the General Conditions may be viewed at the office of the Architect." It is even more significant that under Article 7 of the referred-to A. I. A. "General Conditions," under the Title "Ownership of Drawings," it was stated that "All drawings, specifications and copies thereof furnished by the Architect *are his property.* They are not to be used on other work, and with the exception of the signed Contract set, are to be returned to him on request, at the completion of the work." A deposit of $25 was required by A for each set thus furnished. In addition he filed a set with the city, which he was required to do before a permit for construction could issue.

One Richardson, manager of Allen's original drive-in and for whom he had been employed for about three or four years, without any permission from and unbeknown to his employer, Allen permitted the defendant, G, to copy the plans. He admitted he was contemplating a business relationship with G, who built his drive-in only 17 miles away on the same through highway and on the same side of the highway. When G's drive-in was completed, Richardson went to work for G as manager. G copied the plans drawn by A, whose name was clearly stamped thereon, without seeking any permission to do so either from A or Allen, and G in his defense now claims Allen owned them by virtue of some kind of sale to Allen. This seems to be no reason G could use the plans without permissions from A or Allen, neither of which was forthcoming.

No one in this case says the plans did not call for the construction of a unique and unusually designed building. G simply

said the building did not simulate Allen's in design, and then said that anyway A had lost his common law property right in the plans, having abandoned it by selling them to Allen and selling them to 25 other contractors who may have forfeited $25, and by filing them with the city,—thus publishing them for use by anyone else who wanted to use them. The court found the facts to be consonant with the last two contentions. It said in Finding 4 and 5 as follows:

4. That in supervising the construction of the drive-in, plaintiffs caused to have published and distributed to various building contractors, approximately 25 copies of a complete set of the plans and specifications which could later be purchased from plaintiffs by forfeiting a $25.00 deposit; that plaintiffs did not restrict the use to be made of these plans.

5. A set was filed with the planning and zoning commission at American Fork, Utah, for the purpose of securing a building permit.

As to the question of nonsimulation, we subjoin a picture of Allen's unit followed

by a picture of G's unit and let the reader judge as to such similarity: Furthermore, it is obvious from the answers of G on direct and cross-examination, that he used plans *and specifications* prepared by A for Allen,—his contention to the contrary not-

withstanding,—even as to interior design and construction not discernible by patrons.

■ Of course similarity really is not the crux of this case, although much ado was made of it. The gravamen of this case simply is whether A sold, published or otherwise abandoned his conceded common law right in the plans, irrespective of state or federal copyright legislation. There is nothing in this record, except by way of speculation, to the effect that he abandoned any common law property right in these plans which he created by his own pro-

fessional skill and expertise. A building hardly can be built according to an architect's plans, unless the builder sees them and contractors interested in bidding see them,—else the structure never could be built. It is a well-known fact that architects necessarily have to permit their plans to be examined by bidding contractors in preparing the latters' bids. Many times such plans are loaned to such prospective bidders without charge. That is not to say that in giving such permission to take a look at the plans, he bequeaths his common law right therein to the world,—a result that would automatically enter any such proprietary right. It appears to us that requiring a deposit of $25 to take a look-see at such plans evinces, not an intention to

sell them, but an intention to have them returned to the architect to use in construction perhaps in an area far removed from the local area where competition would be no factor, and in which distant area there would be no question as to using them in an unfair competition problem. The A. I. A. conditions plus the written specifications confirm us in this conclusion. We have no doubt that under the facts of this case A required a deposit to insure the return of the plans, since if A himself used the same plans to supervise the construction of an identical drive-in next door to Allen's, in equity he might have to respond in damages to Allen. Nowhere in this record did A concede nonownership of these plans, but contrariwise said otherwise. He admitted that if the contractors did not return them, the latter could keep them,—but not once did he admit, nor does the record reflect anything to the effect *that they could use them* to construct an identical structure in the area. Finding of Fact No. 4 is not borne out by any substantial evidence, other than speculation, and we think that on this ground alone a reversal is in order.

■ As to publication by filing the plans with the city (a requirement before a permit could issue), the contention that the architect gave up his common law pro-

prietary right, and thereby published and gave it to the world, is somewhat naive. Such conclusion would be absurd and there is no law cited to establish such a contention,—albeit there is respectable authority to refute such a conclusion.[1] The latter we espouse. In passing, Finding of Fact 5 recites this circumstance of filing, and we assume it was recited to show an abandonment and general publication. If that were the intention, we reject it as being untenable.

It seems obvious that the furtive maneuverings of Richardson and G were some sort of peculation accomplished the hard way. The easy way, without deception, simply would have been to examine the plans required to be filed in the courthouse. Had either done so it does not say that either could have *used* them with impunity to build an almost identical building next to one of Allen's or in derogation of the architect's common law property rights therein.

As counsel for G says in its brief: "This is a case of first impression in this State." We think he may be quite right. Our first impression is that A had property rights in his work and plans, protectible against what appears to be an invasion thereof by someone in an effort to convert to a use that which belongs to another.

1. Smith v. Paul, 174 Cal.App.2d 744, 345 P.2d 546 (1959); Edgar H. Wood Associates, Inc. v. Skene, 347 Mass. 351, 197 N.E.2d 886 (1964).

 Now, since we have reversed the trial court, what to do about damages? The only evidence in this respect was A's opinion that the converted plans were worth $2,033. We take it this was admissible evidence, as did the trial court. What the trial court might determine as to this phase of the case, based on the evidence adduced at the trial, since the no cause of action judgment obviated the necessity to canvass the matter of damages, we leave to the trial court based on credibility of the testimony at the trial. This is the limit, however, of plaintiff's claim. There was no other evidence anent damages, except defendant's claim there were none,—a matter we have disposed of hereinabove. The claim for punitive damages to A we think is window dressing and quite untenable under the facts, where the only real claim was in conversion for the value of the item converted.

We conclude that in reversing this judgment, it should be vacated and judgment entered in consonance with this decision, including a finding by the trial court of damages, not to exceed $2,033.

CALLISTER, J., concurs.

TUCKETT, J., being disqualified, does not participate herein.

CROCKETT, Chief Justice:

I concur in the result and add this comment: the trial court, having rejected plaintiff's claim, made no finding on the issue of damage. It seems to me that there should be a trial and determination of that issue.

ELLETT, Justice (dissenting):

I dissent. The discussion about a common law copyright is not controlling in this case, for here the plaintiff was employed by one Allen to prepare plans and specifications and to superintend the construction of a building for Allen. He performed his contract and was paid in full for his services, and having been fully paid, his interest in the plans and specifications was terminated unless he reserved unto himself in the contract with Allen all right, title and interest in and to those plans and specifications.

The fact that the association to which the plaintiff belongs has printed contracts providing that the architect retains all plans and specifications will not suffice. The custom among architects, if there be such, to claim that all right, title and interest remain in the architect, has been held to be unreasonable. In the case of Ebdy v. M'Gowan (1870), 2 Hudson's B.C., 4th Ed. 9, the plaintiff, an architect, had been employed by the defendant to prepare plans for a vicarage. The payment was to be five per cent of costs if the vicarage was completed; three per cent of the estimated cost if tenders were received but work not completed; and two and one-

half per cent of the estimated cost if no invitations for tenders were received. The plans were prepared, but the defendant changed his mind and declined to proceed with the erection of the vicarage. He wrote the architect, offering to pay, and asked for the plans. The architect refused to give up the plans and sued for payment, setting up a custom amongst architects to retain their plans if the work was not proceeded with. It was held that such custom, even if proved, would be unreasonable and defendant need not pay for the plans unless he got them.

This case was followed in 1905 in the case of Gibbons v. Pease, 1 K.B. 810 (C.A.) Here the architect was employed by a building owner to carry out alterations in certain houses. He prepared plans, superintended the work, and was paid his remuneration in full. The building owner then demanded the plans. The architect refused to hand them over. In an action by the owner to recover the plans, the court held that the custom set up by the defendant entitling him as an architect to the property in the plans after the completion of the work and payment therefor was unreasonable and afforded no defense to the action.

In the Nebraska case of Berlinghof v. Lincoln County, 128 Neb. 28, 257 N.W. 373, the plaintiff, an architect, was employed to make plans and specifications and· supervise construction of a courthouse for an agreed compensation. The architect performed the contract and was paid in full. Some ten years later the county employed another architect to draw new plans and specifications for the remodeling of the courthouse and permitted the new architect to use the original plans and specifications made by the plaintiff. The plaintiff claimed the plans as his own and sued for a commission of three and one-half per cent of the amount estimated to be the cost of remodeling. The county filed a general demurrer, which was sustained, and the plaintiff appealed. In affirming the ruling of the lower court, the Supreme Court of Nebraska quoted from 5 C.J. 259 as follows:

An architect ordinarily has no right to the ownership of a plan furnished to,. accepted by, and paid for by another, and plans forming an essential part of the building contract, unless proved to be the property of the architect, are deemed to be the property of the employer.

To the same effect is the text stated in 6. C.J.S. Architects § 10:

§ 10. Plans and Estimates

In the absence of a contrary agreement the architect is not the owner of plans prepared by him which are accepted and paid for by his employer.

As a general rule, one who employs an architect to prepare plans and specifications for a building and pays him

therefor becomes the owner of the plans. An exception, of course, arises where the contract specifically states that all plans and specifications are considered the property of the architect and are to be returned to him. * * *

In harmony with the above is the statement in 5 Am.Jur.2d. Architects, § 11:

In the absence of any agreement to the contrary, where the architect has prepared plans, superintended construction, and been paid for his work, the owner of the building is entitled to the plans. * * *

The Minnesota case of McCoy v. Grant, 144 Minn. 92, 174 N.W. 728, involved a situation where the architect had recovered in the lower court for a second use of a set of plans which had been prepared, used, and paid for, in a former construction project. The trial court, however, in that case had found that the architect was the owner of the plans and that the defendant had promised to pay again for the plans which were used in building a second house. The Supreme Court said:

* * * He insists that, having paid plaintiff for his services in devising and preparing the plans and specifications for his former house, they had become his property, and he had the absolute right to make any use of them he saw fit without compensating plaintiff therefor. It is probably true that one who employs an architect to devise and prepare plans and specifications for a building and pays him therefor becomes the owner of such plans and specifications unless the contract provides that they are not to become his property. Gibbon v. Pease, 2 Ann.Cas. 713, and cases cited in note. But the court found as a fact that plaintiff was the owner of the plans in controversy and that defendant procured them for use in constructing the second house under an agreement to pay plaintiff for them.

An architect as plaintiff has the burden of convincing the trial court by a preponderance of the evidence that in his contract with the client for whom he made the plans he retained all of the right, title and interest in those plans and specifications before he can be determined to be the owner thereof.

In the instant case the trial judge was not convinced that the plaintiff had retained all right, title and interest in and to the plans. In fact, he was convinced to the contrary, and in his ninth finding of fact specifically found: "Plaintiff's contract of employment did not provide that plaintiff retained all right, title and interest in and to the architectural plans and specifications."

I cannot see how we can hold that the trial judge was compelled to make a contrary finding to the one he made. Unless

we can say that he must find that the architect retained the right, title and interest in and to the plans and specifications in question here, then this plaintiff cannot recover for a conversion thereof, as Mr. Allen, the true owner, would be the one entitled to bring such an action. I would affirm the trial court's judgment.

WAHLQUIST, District Judge (dissenting).

I concur in the dissent of Justice Ellett, but desire to make the following observations:

1st. The burden of proving that the architect had reserved ownership in these plans in question was upon the architect. The only evidence directly bearing on this issue was the architect's testimony. The architect testified under oath that he had made a written contract with his client as to the construction of both of the buildings he had designed for his clients and that the contract was an approved form of his association that reserved ownership in himself. On cross-examination he was asked to produce either one of the contracts, but he stated he was unable to do so. He was also challenged by defense counsel to produce either one of these contracts he alleged that his clients held, but did not do so. Counsel also called the court's attention to the existence of the lawsuit filed by architect's client against this defendant in which the architect's client had claimed the ownership of the general style of the building. The architect was requesting a judgment in excess of two thousand dollars. I do not think that it is necessarily unreasonable for the trial judge in this case to fail to accept the architect's testimony. This court has many times held that the finder of fact is not obligated to accept all of the person's testimony who is seeking recovery, and has also approved instructions given to a jury that they may view with distrust less satisfactory evidence than that actually offered if it appears to the jury that it would be ordinarily within the power of the person to produce stronger evidence.

2nd. As the photograph in this case demonstrated, and as the testimony shows, all three of the buildings here constructed are virtually "glass houses," The entire main portion of the building is glass and can be seen by any business invitee. Of course, this would be true also of the restrooms on a selective basis. I know of no case bearing on the question of "common law copyright" wherein the architect has been held to preserve such a right where he has constructed two buildings, one of which has been open to the public for over three years at the time in question. It might be different if this building contained some unique construction secrets. The testimony is that the only thing really unique about this building is its overall general appearance. To extend the "com-

mon law copyright" to such a case is to expand such right to lengths it has never heretofore enjoyed in recorded cases.

I believe that such an extension should be made, if made, by the legislature after a full debate on the issue: (Architects' interest, etc. v. free economic use of information etc.) where the broad issue of the conflicting interests would be determined as opposed to the piecemeal expansion of "common law copyright" by judicial process.