**IMPERIAL HOMES CORPORATION, a Florida Corporation, Plaintiff-Appellant,**

v.

**Michael M. LAMONT and Mrs. Michael M. Lamont, his wife, Defendants-Appellees.**

No. 71–3423

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

April 13, 1972.

N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

896

John A. Curtiss, of Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for plaintiff-appellant.

Arnold D. Levine, Levine & Freedman, P.A., Tampa, Fla., for defendants-appellees.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In this non-jury copyright infringement action, the district court concluded that the plaintiff-appellant had abandoned and waived its copyright rights covering a set of architectural drawings for a residence by reproducing the floor plan design therefrom in a sales promotion brochure which was distributed to induce prospective customers to employ the plaintiff to construct the home. The district court pretermitted as unnecessary any finding as to whether the defendants had copied the floor plan drawing from the brochure in developing their own set of plans for a duplicative house. We hold the court erred in its waiver and abandonment decision and, therefore, remand this cause with instructions to make the pretermitted finding and for further proceedings in accordance herewith.

The plaintiff-appellant, Imperial Homes Corporation, is a merchant-builder engaged in the business of designing, constructing and selling residential dwellings. Imperial developed architectural plans for a residence it named "Chateau". Long prior to the events giving rise to this action, Imperial registered a claim for a copyright on the complete set of architectural drawings for the Chateau home with the Registrar of Copyrights of the United States of America as a published work under Class I (Drawings or Plastic Works of a Scientific or Technical Character). It subsequently constructed model homes according to this design and opened them to the public. In the course of advertising its business, Imperial prepared and distributed to the public an advertising brochure which contained only the floor plan from the complete set of copyrighted architectural drawings. It duly noted in the brochure that it claimed a copyright right on the floor plan, but no effort was made to copyright the advertising brochure. These brochures were used by Imperial in the ordinary course of its business to advertise and promote the sale of homes of the Cha-

teau design, and agents and employees of Imperial gave this brochure to any person who expressed an interest in having Imperial build this home for them. While some minor differences between the copyrighted drawings and the copy appearing in the brochure are apparent from the exhibits in evidence before this court, the parties stipulated, and the lower court found, that the floor plan drawing appearing in the sales brochure was the subject of a valid United States copyright owned by Imperial.

The defendants, Mr. and Mrs. Lamont, became interested in acquiring a home of the Chateau design. They visited one of the residences of this design which had been constructed by Imperial, where they made detailed observations and measurements. Copies of the sales brochure were available to interested prospects who visited this home, including the Lamonts. The evidence was conflicting as to whether the Lamonts obtained a copy of this brochure and as to whether they copied it in developing their own set of drawings for a duplicative residential dwelling. The court resolved the first conflict by finding that they did obtain a copy of the brochure on one of their visits, but declined to make any finding as to whether the Lamonts copied the floor plan in the brochure on the theory that copying this plan would not constitute a copying of the copyrighted drawings. The Lamonts were never shown the complete architectural plans for which a copyright had been issued and there was no direct or circumstantial evidence that either Mr. or Mrs. Lamont had access to Imperial's full set of copyrighted plans for the "Chateau" model home. The court found that they did not copy these plans.

The Lamonts did proceed to develop a set of drawings illustrating the manner of constructing a residential dwelling, intended to be substantially similar to Imperial's model home which they had visited and measured. They next proceeded to construct this home for themselves, hiring their own contracting force and purchasing their own materials. After the duplicate home was built, Imperial brought this action against the Lamonts seeking injunctive relief against further dissemination or use of the allegedly infringing plans, damages, return of profits and attorneys' fees.

The resolution of two issues controls the disposition of this appeal. First, did the reproduction of the floor plan from the copyrighted set of architectural drawings in an advertising brochure waive or abandon the copyright right? We hold it did not. Would copying this reproduction constitute an infringement of the copyright right? We hold it would.

I.

Article I, Section 8, Clause 8 of the Constitution confers upon Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Congress has exercised the prerogative flowing from this fountainhead of authority by creating a statutory system for the registration and protection of copyrighted materials, which is contained in Title 17, U.S.C.A. This national system permits copyright rights to be secured on ". . . all the writings of an author." 17 U.S.C.A. § 4. In Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 58, 4 S.Ct. 279, 28 L.Ed. 349 (1884), "an author" was defined as "he to whom anything owes its origin; originator, maker; one who completes a work of science or literature." Hence, the architect who originates a set of blueprints for a dwelling is as much an author for copyright purposes as the writer who creates an original novel or the dramatist who pens a new play. This authorship concept is no more than one facet of the essence of that which merits copyright protection—originality. However, while such originality is the test for copyrightability, it does not extend so far as to require that novelty or invention, which is the sine qua non for patent protection, be present. Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.

Ed. 630 (1954). Also basically germane to the case at bar, Congress has provided that works classified as "[d]rawings or plastic works of a scientific or technical character" are copyrightable, 17 U.S.C.A. § 5(i); and the regulations of the Copyright Office expressly include "an architect's blueprint" as a work registerable within this class. 37 C.F.R. § 202.12(a). Finally, every valid copyright vests in its holder the exclusive prerogative "[t]o print, reprint, publish, copy, and vend the copyrighted work;". 17 U.S.C.A. § 1(a).

## II.

■ The district court's legal conclusion that the publication of the floor plan design from its copyrighted drawings in a promotional brochure waived and abandoned Imperial's statutory copyright rights, is both novel and erroneous. A part of the rights which the very first sentence of the copyright act confers upon a statutory copyright owner is the right to make and to publish copies of his protected work, 17 U.S.C.A. § 1(a). It would be illogical to permit the enjoyment of these expressly accorded privileges to destroy the efficacy of the whole protection intended. Indeed, the protected privilege of enjoying the fruits of public dissemination is a principal reason for seeking to perfect statutory protection rather than relying on common law proprietorship. *See* 17 U.S.C.A. § 10.

■ Abandonment can only be shown by proving the copyright proprietor intended to surrender the rights in a work he so deliberately perfected. Rather than the publication of the instant booklet evincing abandonment, the opposite intention is disclosed, because in the brochure Imperial expressly claimed that the floor plan design was the subject of a copyright. National Comics Publications, Inc. v. Fawcett Publications, Inc., 191 F.2d 594 (2d Cir. 1951). *See also* Rushton v. Vitale, 218 F.2d 434 (2d Cir. 1955), and Nimmer on Copyrights, § 146. *Cf.* Deward & Rich v. Bristol Sav-

ings & Loan Corp., 120 F.2d 537 (4th Cir. 1941).

## III.

The claim made on this appeal goes deep—to the very heart of the right accorded to architectural plans by a statutory copyright. Relying upon Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841 (1879), and Scholz Homes, Inc. v. Maddox, 379 F.2d 84 (6th Cir. 1967), the Lamonts assert that no protectable right was conferred by Imperial's copyright of its architectural plans which survived its exercise of the exclusive statutory prerogative to make and publish copies of portions of these plans to promote the sale of the house they described. At a minimum, the Lamonts say that there was no infringement if they copied only the floor plan from the advertising booklet.

The 1879 doctrine of Baker v. Selden, *supra,* has created considerable problems in determining the protection to be accorded many works in the § 5(i) class, subsequently added to the copyright statutes by the act of March 4, 1909, 35 Stat. 1076. In that case, Selden obtained a copyright on a book explaining a new system of bookkeeping, which included blank forms with ruled lines and headings which had been designed for use in connection with the new system. Baker issued a book containing some slightly different forms which achieved the same result taught by Selden. In a decision which sought to draw a strict differentiation between patent monopoly rights and copyright protection, the Supreme Court held Baker had not infringed. The opinion stated:

". . . the rules and methods of useful art have their final end in application and use; and this application and use are what the public derive from the publication of a book which teaches them. But as embodied and taught in a literary composition or book, their essence consists only in their statement. This alone is what is secured by the copyright. The use by another of the same methods of statement, whether in words or illustra-

tions, in a book published for teaching the art, would undoubtedly be an infringement of the copyright."

■ In terms of an architectural drawing, the Baker v. Selden rationale would assert that no architect who copyrights his blueprints could thereby acquire a monopoly on the right to build a house with 2 x 4s or with a pitched roof or with a slab foundation or any other particular feature, no matter how unique.. The court was concerned that copyright privileges might result in vesting exclusive use rights which only a patent could confer. We therefore interpret this decision as holding that a descriptive copyright may not extend an exclusive right to the use of the described art itself lest originality of description should preempt non-novel invention. Thus, no copyrighted architectural plans under § 5(i) may clothe their author with the exclusive right to reproduce the dwelling pictured. However, nothing in Baker v. Selden prevents such a copyright from vesting the law's grant of an exclusive right to make copies of the copyrighted plans so as to instruct a would-be builder on how to proceed to construct the dwelling pictured.

In Scholz Homes, Inc. v. Maddox, *supra*, the Sixth Circuit decided a case almost identical to the case at bar. There, the floor plan portion of copyrighted architectural plans for residential dwellings were reproduced in a booklet which was separately copyrighted. Scholz Homes sued Maddox for infringing their copyrighted plans. The trial court denied relief. The Court of Appeals pointed out that Scholz had produced no evidence which would permit the inference that Maddox had utilized Scholz's copyrighted plans as such. Without deciding whether the defendant had copied the floor plan depicted in the copyrighted booklet, the court was willing to assume that this had been done. It affirmed the holding of nonliability. Based upon its interpretation and application of Baker v. Selden, it held that since the booklet had been copyrighted only to preserve its value as an advertising medium and not to give Scholz Homes the exclusive right to copy the plans depicted therein, any copying of the floor plan from the booklet would not constitute an infringement of the booklet or plaintiff's basic copyright on architectural drawings. With deference to our brethren of the Sixth Circuit, we simply do not read the ambit of statutory copyright protection for such a case so narrowly.

■ No one can defend the appropriation of portions of an original copyrighted work by arguing that the author published such extracts to promote the value and desirability of his copyrighted product and that only these extracts have been pirated. This is neither in accord with the letter of the law, *see,* 17 U.S.C.A. § 3, nor with the spirit of the economic philosophy ascribed to the constitutional and statutory protection accorded copyrights which finds its basis in the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors, by assuring that sacrificial days devoted to such creative activities receive rewards commensurate with the services rendered. Mazer v. Stein, *supra.* The exclusive right to *copy* what is copyrighted belongs to the architect, even though the plans give him no unique claim on any feature of the structure they detail. If it is determined upon remand that the Lamonts copied the floor plan set forth in the promotional booklet distributed by Imperial, then this copying would constitute an infringement of Imperial's copyright privileges.

## IV.

Two caveats are appropriate. First, we do not hold that the Lamonts were in anywise restricted by the existence of Imperial's copyright from reproducing a substantially identical residential dwelling. All we hold is that if copyrighted architectural drawings of the originator of such plans are imitated or transcribed in whole or in part, infringement occurs.

Second, we intimate no view whatsoever as to whether the Lamonts' floor plan is substantially similar to the brochure floor plan and, if so, whether the Lamonts copied from the brochure.

Reversed and remanded, with directions.