George M. **HEDLA** et al., etc., Appellees,

v.

Blaine **McCOOL** et al., etc., Appellants.

George M. **HEDLA** et al., etc., Appellants,

v.

Blaine **McCOOL** et al., etc., Appellees.

Nos. 71–1985, 71–2017.

United States Court of Appeals,
Ninth Circuit.

April 10, 1973.

Richard A. Helm (argued), Edward W. Tucker, Burr, Pease & Kurtz, Anchorage, Alaska, for Blaine McCool and others.

Allen McGrath (argued), McGrath & Flint, Anchorage, Alaska, for appellee George M. Hedla.

Before MERRILL, DUNIWAY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

These appeals are from judgments on claims and counterclaims arising from a contract between Hedla & Sherwood (accountants) and McCool & McDonald (architects). The district court awarded $12,587 plus costs and attorneys' fees to accountants and denied relief to architects. The court obtained jurisdiction because of diversity of citizenship under 28 U.S.C. § 1332. The appeal is before us by virtue of 28 U.S.C. § 1291.

Little dispute exists as to the basic facts although some of the collateral issues are not as clear. Architects and accountants entered into a written agreement on or about September 2, 1964, for architectural services to be performed for accountants. Neither McCool nor McDonald was an architect licensed by the State of Alaska at the date of the signing of this agreement. The contract was for the construction of a building at a cost of approximately $96,000. Although the cost figure was not stated in the contract, it was discussed and understood. When the plans were completed, they were delivered to accountants so that construction bids could be obtained. The low bid amounted to the sum of $195,544.20 including the cost of some basement and foundation work already completed and the cost of some ceramic tile already purchased. Efforts of the architects to redesign in order to bring the building cost to a figure approximating the accountants' proposal were unavailing.

Because of the disparity between the estimated cost and the low bid the accountants notified the architects that they were terminating the contract and would employ another architect. This they did, but lost the expected use of the building for approximately a year because of the delay.

A statute of the State of Alaska provides that it is unlawful for a person to practice or offer to practice architecture in the state unless he is registered and licensed.[1]

Alleging breach of contract, the architects sued for recovery of fees and infringement of common law copyright because accountants had made use of the architects' plans. The accountants asserted in defense that the contract was unenforceable because architects were unlicensed, and filed a third party action against the architects for damages caused by delay and improper design.

On cross motions for summary judgment, the defense of unenforceability of the contract because of the failure of the architects to be licensed in Alaska, was sustained. The trial court also dismissed the counts of the complaint based upon common law copyright and wrongful appropriation of plans. The architects' complaint was thus dismissed in its entirety. Finally, the trial court granted the accountants' motion for summary judgment as to the liability of the architects for failure to furnish useable plans pursuant to the contract. Trial was held before the court on the

---

1. *"Registration required.* It is unlawful for a person to practice or to offer to practice professional engineering or professional architecture in the state unless he is registered and licensed." AS 08.48.150.

There is also a statute which makes it a misdemeanor for an unauthorized person to practice professional architecture in the state. Either fine or imprisonment may be imposed. AS 08.48.400.

only issue remaining which was the amount of damages sustained by the accountants. Those damages were fixed at $30,030 for loss of building use, less $17,443 which the accountants would have had to pay for expenses had the building been in use, or a net sum of $12,587 plus attorneys' fees and costs. The court denied recovery for the cost of ceramic tile which accountants had purchased for the new building but did not use, because no evidence was produced as to its present value.

The architects appeal from the summary judgment which denied them all relief upon their complaint, and from the money judgment entered against them. The accountants appeal from the refusal of the court to award recovery to them for the cost of the tile and to award prejudgment interest.

■ We believe the trial court was correct in all particulars and affirm.

Architects contend that if they do not perform much work within the state and have no continuous business there, the Alaska statute does not apply. They point out that because the work on the plans was done principally, if not completely, in Seattle where they were licensed, they were not practicing professional architecture "in the state." Reliance is placed upon Gaisford v. Neuschatz, 201 So.2d 635 (Fla.Dist.Ct.App. 1967) and Johnson v. Delane, 77 Idaho 172, 290 P.2d 213 (1955).

■ The Alaska professional code, however, has a provision which will not permit such a narrow construction. Section 08.48.190 states:

"A registered professional . . . architect who is not a resident of the state or does not have an established place of business in the state but who possesses the qualifications required by this chapter shall qualify under this chapter before he may solicit business for, enter into contracts for, or perform professional services requiring registration or a permit."

In addition, the evidence disclosed this was not an isolated transaction.

Architects also point out that because their plans were submitted to and approved by an engineer registered in Alaska they are not in violation of the laws of Alaska. They point to Dick Weatherston's Associated Mechanical Services, Inc. v. Minnesota Mutual Life Insurance Co., 257 Minn. 184, 100 N.W. 2d 819 (1960), in support of their position. In that case, however, the unlicensed architect had been employed as a contractor, not as an architect. All of his plans and designs were submitted to the owner's licensed architects for approval. The case here more closely parallels Food Management, Inc. v. Blue Ribbon Beef Pack, Inc., 413 F.2d 716 (8th Cir. 1969), where the court held that the company was practicing engineering and architecture within the state because the firm with which they were associated and which was licensed, was not performing the entire service and was not in charge of the work. The rule relied upon by accountants has solid support in the authorities as being for the protection of the public. Snodgrass v. Immler, 232 Md. 416, 194 A.2d 103 (1963); Lapuk v. Blount, 2 Conn. Cir. 271, 198 A.2d 233 (1963); Hickey v. Sutton, 191 Wis. 313, 210 N.W. 704 (1924); see Restatement of Contracts § 598, comment a at 1110 (1932). The differences in conditions in Alaska from those in the "lower 48" justify the requirement of an Alaskan license as a matter of state policy for the protection of its citizens.

■ After the contract had been terminated, the accountants employed a licensed Alaskan architect and gave him the plans. This included the floor plans prepared by the accountants in the first instance and given to the architects. The Alaskan architect incorporated about 15% of the unlicensed architects' plans in his own work product in preparing new plans which would be within the accountants' proposed cost range. Architects claim the right to recover damages for infringement of their common law copyright and the appropriation of their work.

Architects rely principally on Ashworth v. Glover, 20 Utah 2d 85, 433 P.2d 315 (1967), and Vic Alexander & Associates v. Cheyenne Neon Sign Co., 417 P.2d 921 (Wyo.Sup.Ct.1966), to support this claim. In neither of those cases does there appear to have been an illegal contract. Here, however, there was an illegal contract, and that illegal contract must necessarily be relied upon to recover in any theory of common law copyright or quantum meruit. In other cases cited by architects an illegal contract was involved, but the court allowed recovery because suit was brought not upon the illegal contract but upon a separate contract. That situation does not prevail here. In Ryan v. Mike-Ron Corp., 226 Cal.App.2d 71, 37 Cal.Rptr. 794 (1964), relief was granted even though there had been an illegal contract. It did so because it felt that justice could be done without disserving the public interest. Architects' reliance on *Ryan* overlooks the fact that the contract there was not prohibited by statute and only a small part of the consideration for the bargain involved motor vehicles, the sale of which required particular formalities in the contract. The court recognized the general rule which is applicable here.

"As a general rule, however, a guilty party to an illegal contract cannot recover in quasi contract for the benefit conferred." 37 Cal.Rptr. at 796.

There is no reason to expect that the courts of Alaska would not follow the general rule. In such cases where there appear to be no state decisions we give great deference to the judgment of the district court for an assessment of what might be expected were the state court to rule upon the problem. Bigjoe v. Pioneer American Insurance Co., 446 F.2d 28 (9th Cir. 1971). We have no reason here to believe his judgment was not correct.

The final matters for consideration concern the right of the accountants to recover damages for loss of use of the building and for the cost of tile which accountants bought and did not use, together with the claim of offset by the architects.

■■ Generally if a contract is illegal, neither party may recover on it. Associated Press v. Taft-Ingalls Corp., 340 F.2d 753 (6th Cir.), cert. denied, 382 U.S. 820, 86 S.Ct. 47, 15 L.Ed.2d 66 (1965); Harriman v. Tetik, 56 Cal.2d 805, 17 Cal.Rptr. 134, 366 P.2d 486 (1961). The court leaves the parties where they are on the theory that it will not aid either wrongdoer. Singleton v. Foreman, 435 F.2d 962 (5th Cir. 1970); Whitney v. Continental Life & Accident Co., 89 Idaho 96, 403 P.2d 573 (1965). However, where one of the parties is ignorant of the illegality he is not precluded from the recovery of damages by the nonperformance of the bargain by the other. Singleton v. Foreman, *supra*, 435 F.2d at 969; Redke v. Silvertrust, 6 Cal.3d 94, 98 Cal.Rptr. 293, 490 P.2d 805 (1971).

Said the trial court with reference to knowledge of illegality by the accountants:

"At no time since either the beginning of this case, some four years past, or the ruling by this Court declaring the contract illegal, have defendants ever asserted, except during oral argument on their motion for summary judgment, one day before trial, that plaintiffs (accountants) knew of or even supposed that defendants were not licensed to practice architecture within the State of Alaska. Since defendants have failed to raise this issue in a timely manner, little justification exists to present it at this late date as a genuine issue in this case. . . . Therefore defendants may be afforded relief for damages, if any, sustained under the illegal contract." C.T. at 244–45.

■■ The architects in their brief before this court assert that the accountants were aware of the fact that architects were not licensed. Appellants' Brief at 27. The statement is not documented and we have not found any evidence to support it. The accountants

deny the truth of the statement in their brief and assert there is no evidence to support it. On such a record the court's finding of liability for the architects' breach of the agreement and award of damages for loss of use is justified. This total was in the sum of $12,587. The testimony on the basis of which computation was made was conflicting. We do not find that it was clearly erroneous.

■ Accountants also sought recovery for the cost of ceramic tile which was purchased for the building but never used. The tile belongs to the accountants and is in their possession. No evidence was offered to establish the present value so that any loss could be computed. The court was therefore correct in denying recovery for this item.

■ In a final effort to obtain relief, the architects argue that if they are unable to recover affirmatively against the accountants for the value of their services rendered on the contract, or in quantum meruit, then they should be permitted to offset accountants' recovery in the amount the architects would have been entitled to recover had the contract been enforcible. Reliance is placed upon three California decisions to support this position.

Apart from the decisions, the basic difficulty with the architects' position is that the court made no finding of any amount which they would have been entitled to recover had the contract been enforcible. They were employed to produce plans for the construction of a building approximating a certain cost.

They failed to do so. Under those circumstances they would not have been permitted to recover anything under the contract. The California cases permitting offset were decided under a statute different from that which was in force in Alaska. Culbertson v. Cizek, 225 Cal.App.2d 451, 37 Cal.Rptr. 548, 560 (1964); Steinwinter v. Maxwell, 183 Cal.App.2d 34, 6 Cal.Rptr. 496 (1960); S & Q Construction Co. v. Palma Ceia Development Organization, 179 Cal.App. 2d 364, 3 Cal.Rptr. 690, 692 (1960). They were cases where a contractor, not an architect, was seeking equitable offset for work done. Accountants point out that the California statute requiring licensing of a contractor is one which is *malum prohibitum* and not *malum in se*. Steinwinter v. Maxwell, *supra*, 6 Cal. Rptr. at 499. In the present case a fine or imprisonment may be imposed upon an architect for violation of the licensing laws. Alaska's statute is not simply prohibitory, but rather reflects a sufficiently grave policy against illegality which justifies denial of relief to the architects under the circumstances of this case.[2]

■ The accountants claim for prejudgment interest was disallowed. Under the doctrine of State v. Phillips, 470 P.2d 266 (Alaska 1970), prejudgment interest should be awarded, "unless for some reason peculiar to an individual case such an award of interest would do an injustice." 470 P.2d at 274. Here the court disallowed prejudgment interest. Among the court's findings of fact was the finding that "[t]he delays in the prosecution of this suit are not

---

2. The trial judge stated in his memorandum and order that the accountants made no claim for a refund of $1,941.44 which constituted the amount paid by them to the architects as partial payment for architectural services. Among factors that are influential in determining whether restitution or some other judicial remedy will be granted to a party who has rendered part of an illegally bargained-for exchange are: "the degree of criminality or evil, the comparative innocence or guilt of the parties,

the extent of public harm involved, the moral quality of the conduct of the parties, and the severity of the penalty or forfeiture that will result from refusal of relief." 6A Corbin on Contracts § 1534 at 818; *accord*, Restatement of Restitution § 140.

Following an evaluation of the factors in this case, we agree with the trial court's conclusion that the equities are sufficiently satisfied by permitting the situation to remain as it is.

chargeable to either party." C.T. at 275. We do not find the court's ruling with respect to prejudgment interest is clearly erroneous.

The judgment is affirmed.