388 So.2d 1310 (1980)
Richard E. KISLING, t/a R.E.K. Group, Appellant,
v.
Stephen T. ROTHSCHILD and House of Rothschild, Inc., a Florida Corporation, Appellees.
No. 79-1008/T4-538.
District Court of Appeal of Florida, Fifth District.
October 8, 1980.
*1311 Thomas V. Infantino and Patrick A. Raley, Winter Park, for appellant.
DeWolf, Ward, Morris, Wohlust & Starling, P.A., Orlando, for appellees.
SHARP, Judge.
Kisling appeals from a final judgment after a non-jury trial denying him any relief against Rothschild and his company, House of Rothschild, Inc. In December 1977, Kisling filed a law suit seeking damages and injunctive relief against Rothschild because Rothschild had copied construction drawings and plans for a residence designed by Kisling, and built homes based on Kisling's plans without his consent. The trial court held Kisling had no rights to his design and plans based on common law copyright because his plans were not "novel or secret." It also held Kisling lost whatever common law copyright protection he may have had when he "published" the plans by filing them with the Seminole County Building Department to obtain a building permit, and by lending them to a friend who was thinking about building a home for himself. We reverse.
The evidence is without substantial conflict. In 1977, Kisling, a contractor and builder of residential homes, designed a horse-shoe shaped home with an interior courtyard, to be build in the Wekiva and Raintree areas. The design was intended to maximize natural light in the house, given the small size of the lots and set-back requirements in those subdivisions. Final construction drawings were prepared and submitted to the Seminole County Building Department to obtain a building permit, and Kisling built a home based on the plans.
Hancock, an acquaintance of Kisling's, mentioned he was considering building himself a home. They talked about Kisling's house and design. Hancock asked Kisling to let him take the plans home to show them to his wife. He wanted her to see the design for the "loft" in Kisling's plans. Kisling allowed Hancock to take the plans for that purpose.
Shortly thereafter Hancock happened to meet Rothschild at McDonald's. They talked about building homes. Hancock showed Rothschild Kisling's plans, and Rothschild asked for a copy of them. At Rothschild's request and expense, Hancock had a copy of Kisling's plans made at a blue-print shop. He gave them to Rothschild and returned Kisling the original plans. For a long time Hancock refused to admit to Kisling that he had given Rothschild a copy of the plans.
Rothschild made a few minor changes in the plans, and had them copied over with his company's name and logo on the front. He used the plans to build homes in the same area as Kisling's. He also visited *1312 Kisling's completed residence, surreptitiously, to check on a few construction details not clear in the plans.
Two architects or expert witnesses testified. The witness for Rothschild said Kisling's design was not "unique" or "novel" because it was for a "spec" home rather than being intended for a particular family or owner. The witness for Kisling said the plan was "unique" in the sense that it was an original architectural design product.
If we take on an assignment, given certain objectives of the client and design for those objectives, we're going to come up with a unique plan, not that its startling contemporary or startling in any fashion, just a unique creation... . I would say the combination of the spaces is unique, and it has uniqueness by the way it was developed. He had an object in mind, worked towards that object, and then developed all the systems that would make that particular plan work.
(T. 59).
Initially we note that although this decision may be one of "first impression" in this state, it is also one of the last on the subject. Federal law[1] has preempted this field, effective January 1, 1978. But that law does not apply in this case because the plans were appropriated and this suit was filed in 1977. In the balance of this opinion we will refer only to the law of common law copyright prior to 1978.
Common law copyright extends to a wide variety of artistic and commercial products.[2] Architectural plans and designs are clearly covered by its umbrella.[3] The test is not whether the plan is "unique," "secret," or "novel," as is required for patents. Imperial Homes Corp. v. Lamont, 458 F.2d 895 (5th Cir.1972); Herman Frankel Organization v. Tegman, 367 F. Supp. 1051 (E.D.Mich. 1973); Ga-On Homes, Inc. v. Spitzer, 178 U.S.P.Q. 183 (M.D.Fla. 1973). Few novelists or artists could ever meet that test.
Hence, the architect who originates a set of blue prints for a dwelling is as much an author for copyright purposes as the writer who creates an original novel or dramatist who pens a new play. This authorship concept is no more than one facet of the essence of that which merits copyright protection-originality. However, while such originality is the test for copyrightability, it does not extend so far as to require that novelty or invention, which is the sine qua non for patent protection, be present.
Imperial Homes, 458 F.2d at 897.
The umbrella of protection afforded by a common law copyright folds up and vanishes when the owner of the product "publishes" it, or in some manner dedicates it to the public.[4] The real issue in this case is whether Kisling lost his copyright protection when he allowed Hancock to look at his plans, or when he filed the plans with the county authorities to obtain a building permit.
The owner of a product covered by a common law copyright may make a "limited" or "restricted" publication and still preserve its protection.[5] The burden of proof is on the user of the product, Rothschild, *1313 to show the publication was a "general" one.[6]
A limited publication of a subject of copyright is one which communicates a knowledge of its content, under conditions expressly or impliedly precluding its dedication to the public... . The test is whether there is or is not such a surrender as permits the absolute and unqualified enjoyment of the subject matter by the public as the members thereof to whom it may be committed.
... a general publication consists of such a disclosure, communication, circulation, exhibitions, as of the subject of copyright, tendered or given to one or more members of the general public, as implies an abandonment of the right of copyright or its dedication to the public.
Werkmeister v. American Lithographic Co., 134 F. 321 (2d Cir.1904).
In this case, Kisling lent his plans to his friend, Hancock, for his and his wife's personal viewing. This is analogous to the private circulation of a manuscript, or the playing of a musical composition before a select audience. It does not constitute a general publication. See Imperial Homes v. Lamont, 458 F.2d 895 (5th Cir.1972); Ga-On Homes, Inc. v. Spitzer Homes, Inc., 178 U.P.S.Q. 183 (M.D.Fla. 1973); Stanley v. Columbia Broadcasting Systems, Inc., 35 Cal.2d 653, 221 P.2d 73 (1950); Masterson v. McCroskie, 573 P.2d 547 (Colo. 1978); Seay v. Vialpando, 567 P.2d 285 (Wyo. 1977).
There are conflicting decisions concerning whether the filing of plans with building authorities to obtain a building permit prior to construction constitutes a "limited" or a "general publication." Compare DeSilva Construction Corp. v. Herrald, 213 F. Supp. 184 (M.D.Fla. 1962) with Jones v. Spindel, 128 Ga. App. 88, 196 S.E.2d 22 (1973). However the better view is that such a filing does not constitute a "general publication" because the purpose of laws and ordinances requiring plans to be filed is to insure the construction of safe and acceptable building in a community, and not to deprive the architects and owners of plans of common law copyrights. Smith v. Paul, 174 Cal.2d 744, 345 P.2d 546 (1959); Masterson v. McCroskie, 573 P.2d 547 (Colo. 1978); Jones v. Spindel, 128 Ga. App. 88, 196 S.E.2d 22 (1973); Edgar H. Wood Associates, Inc. v. Skene, 347 Mass. 351, 197 N.E.2d 886 (1964); Krahmer v. Luing, 127 N.J. Super. 270, 317 A.2d 96 (1974); Shaw v. Williamsville Manor, Inc., 38 A.D.2d 442, 330 N.Y.S.2d 623 (1972); Ashworth v. Glover, 20 Utah 2d 85, 433 P.2d 315 (1967). We agree that compliance with the building codes should not result in an automatic forfeiture of a common law copyright. The contrary view appears to us as unfair if not absurd.[7]
We conclude Kisling established his cause of action against the defendants. Accordingly, we reverse the final judgment and direct that a judgment be entered for the plaintiff. We remand this cause to the trial court for determination of the amount of compensatory damages due to the plaintiff.[8] Because of the length of time that has transpired since the trial of this case, the court may at its option take additional testimony on the damages issue.
REVERSED and REMANDED.
DAUKSCH, C.J., and COBB, J., concur.
NOTES
[1] The Copyright Act of 1976, 17 U.S.C.A. § 301(a).
[2] 18 Am.Jur.2d Literary Copyright & Property § 10 (1965).
[3] 18 Am.Jur.2d Copyright & Literary Property § 10 (1965); Imperial Homes Corp. v. Lamont, 458 F.2d 895 (5th Cir.1972); DeSilva Construction Corp. v. Herrald, 213 F. Supp. 184 (M.D. Fla. 1962); Smith v. Paul, 174 Cal. App.2d 744, 345 P.2d 546 (1959); Masterson v. McCroskie, 573 P.2d 547 (Colo. 1978); Krahmer v. Luing, 127 N.J. Super. 270, 317 A.2d 96 (1974); Edgar H. Wood Associates, Inc. v. Skene, 347 Mass. 351, 197 N.E.2d 886 (1973); Ashworth v. Glover, 20 Utah 2d 85, 433 P.2d 315 (1967); Seay v. Vialpando, 567 P.2d 285 (Wyo. 1977).
[4] 18 Am.Jur.2d Copyright & Literary Property § 9 (1965); Schleman v. Guaranty Title Co., 15 So.2d 754 (Fla. 1943) dictum.
[5] 18 Am.Jur.2d Copyright & Literary Property § 79 (1965). Nimmer On Copyright § 58 at 224 (1976).
[6] Masterson v. McCroskie, 573 P.2d 547 (Colo. 1978); Seay v. Vialpando, 567 P.2d 285 (Wyo. 1977).
[7] Ashworth v. Glover, supra.
[8] The lower court ruled that punitive damages were not established, and because this point was not raised on appeal, that ruling is not affected by this decision.