ARTHUR RUTENBERG CORPORA-
TION, and Rutenberg/Gnagey,
Ltd., Plaintiffs,

v.

Joseph PARRINO, Elenora Parrino,
and Precision Drafting, Inc.,
Defendants.

No. 85–1556 Civ. T–17.

United States District Court,
M.D. Florida.

March 30, 1987.

David P. Rhodes, Johnson, Blakely, Pope, Bokor & Ruppel, P.A., Clearwater, Fla., for plaintiffs.

Merrill N. Johnson, Naples, Fla., Michael F. Tew, Tew & Truitt, P.A., Fort Myers, Fla., for defendants.

## MEMORANDUM DECISION

MILES, Senior District Judge (Visiting).

This case was tried before visiting Judge Wendell A. Miles, Senior Judge, Western District of Michigan, on February 18 and 19, 1987, in the Fort Myers Division of the Middle District of Florida. Although the complaint originally contained two counts, the plaintiffs moved to dismiss Count II (unfair trade practices and competition) before trial was complete. That motion is GRANTED and the only issues considered in this opinion relate to Count I which alleges copyright infringement and the cross-claims for indemnification asserted by the defendants.

Plaintiff Arthur Rutenberg Corporation ("Rutenberg") is the owner of architectural drawings for the "Inverness" model home floor plan. (Defendant's Exhibit 7). Rutenberg has received from the Registrar of Copyrights a Certificate of Copyright Registration on the "Inverness" plans, numbered VA 158–305, with a publication date of June 6, 1983, and effective date of registration of August 18, 1983. (Plaintiffs' Exhibit 1). Plaintiff Rutenberg/Gnagey, Ltd. ("R/G Ltd.") has been licensed by Rutenberg to utilize Rutenberg's copyrighted architectural drawings to build and sell residential dwellings, including the "Inverness" plans.

In 1983, Joseph Parrino and his wife, Elenora Parrino, were considering building another home. According to his testimony, Joseph Parrino visited a number of model homes to gather ideas for the construction of his new home. He planned to submit his ideas to a draftsman for the design of a set of drawings, after which he planned to subcontract out work for the construction of his home as he had done on at least two prior occasions.

In July 1983 Joseph Parrino met with Frank Janus, President of Precision Drafting, Inc. ("Precision") and retained Precision to design the plans for the Parrino's new home. Joseph Parrino testified that he wanted Precision to design the new house based on modified plans of the house he was living in at the time. ("old house plans"; Defendant's Exhibit 2). His testimony further explained that the purpose of building a new home was that he wanted a home overlooking Fiddlesticks golf course in South Fort Myers. Although use of his old house plans may have been his original intention, the facts show that he abandoned the old house plans and substituted, with relatively slight variations, floor plans of the "Inverness" which he acquired from R/G Ltd.

Joseph Parrino met with Frank Janus on at least eight occasions from July 1983 to November 1984. Janus testified that it usually took less time and fewer meetings (four or five) for the preparation of a set of house plans. Although the defendants attempted to explain that the extra meetings and delay were because of Joseph Parrino's intervening cancer surgery, the facts indicate that they were for the purpose of incorporating the "Inverness" floor plans into Parrino's new house plans. Significantly, Joseph Parrino visited an Arthur Rutenberg model home and received a brochure containing a simplified copy of the copyrighted "Inverness" floor plan on June 18, 1984, and, on the very next day, went to Precision for another meeting with Janus. See Defendant's Composite Exhibit 1A–P (Janus' appointment book).

At trial, Joseph Parrino testified that, although he may have received a brochure containing a copy of the "Inverness" floor plan,[*] he threw the brochure away. The

---

[*] Joseph Parrino has stipulated to the fact that he received a brochure containing the copyrighted floor plan. See pretrial stipulation at 5.

Court finds that such testimony is inconsistent with the facts of this case and otherwise incredible.

Precision eventually prepared a final set of plans for the Parrino home (Defendants' Exhibit 3A) and a house was built at 25 Pine Villa Lane, Fiddlesticks Country Club, Fort Myers, Florida, according to those plans. A comparison of the final plans for the Parrino's new home and the copyrighted "Inverness" architectural drawings reveals a remarkable number of similarities, including, but not limited to: the wall angels, the placement and number of rooms, the fireplace, the mitered glass in the entrance way, the placement of skylights, the kitchen design, the three car garage and the T.V. nitch. In fact, the Court finds that "an average lay observer would recognize the [Parrino's new home plans prepared by Precision] as having been appropriated from the copyrighted ['Inverness' plans]." *Original Appalachian Artworks, Inc. v. Toy Loft,* 684 F.2d 821 (11th Cir.1982) (quoting *Novelty Textile Mills, Inc. v. Joan Fabrics,* 558 F.2d 1090, 1092–93 (2d Cir.1977)). These substantial similarities relate to essentially non-functional aspects of Rutenberg's copyrighted expressions (as opposed to ideas). *See* 17 U.S.C.A. sec. 102 (West 1977) (ideas not protected); *see also id.* at par. 20 of Historical Note (architect's plans). These findings are also supported by the testimony of John W. Gnagey of R/G Ltd., who, upon viewing the new Parrino house under construction and upon independent examination of the Parrino plans, found substantial similarity between the Parrino's new home plans and the Rutenberg "Inverness" plans.

■ In order to establish copyright infringement, a plaintiff must prove (1) his ownership of the copyright and (2) "copying" by the defendant. *Ferguson v. National Broadcasting Company, Inc.,* 584 F.2d 111, 113 (5th Cir.1978). Copying may be proved by showing access of the allegedly infringed material by the defendant and substantial similarity. *Id.* This showing may be rebutted by the defendant with evidence of independent creation. *See, e.g.,*

*Miller v. Universal City Studios, Inc.,* 650 F.2d 1365 (5th Cir.1981). Alternatively, copying may be proved if the two works are so "strikingly similar as to preclude the possibility of independent creation." *Ferguson,* 584 F.2d at 113. Although, arguably, the plaintiff has shown "striking similarity," the Court does not rest its decision on that finding.

■ It is undisputed that Rutenberg had a valid copyright on the "Inverness" floor plan as expressed in Defendants' Exhibit 7. *See* pretrial stipulation at 6. The defendants contend, however, that copyright protection did not extend to the depiction of the "Inverness" floor plan in the brochure given to Joseph Parrino because, despite the fact that the brochure plan bore a copyright notice, the brochure drawings were not independently filed with the Copyright Office and the plaintiffs did not otherwise offer evidence that the defendants had access to the copyrighted architectural drawings. The defendants' argument is without merit. *See Ronald Frederick Evans v. Continental Homes, Inc.,* 785 F.2d 897, 904–905 (11th Cir.1986) (depictions of copyrighted floor plans in unregistered brochures are protected by copyright laws), *citing Imperial Homes Corp. v. Lamont,* 458 F.2d 895, 899 (5th Cir.1972).

■ Since Joseph Parrino does not deny receiving the "Inverness" brochure, this Court finds that he had an opportunity to view the copyrighted work. Such opportunity constitutes "access" within the meaning of that term. *See Ferguson, supra,* 584 F.2d at 113 ("access" includes opportunity to view copyrighted work). Joseph Parrino's access to the "Inverness" plans is fairly attributable to Precision because "evidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiffs' work is sufficient to establish access by the defendant." *Kamar International, Inc. v. Russ Berrie and Co.,* 657 F.2d 1059, 1062 (9th Cir.1981) (quoting *Nimmer on Copyright,* sec. 13.-02[A] at 13–11 (1981)). This finding, together with the finding of substantial similarity, *see* discussion at 3–4, *supra,* and the fact that Rutenberg has a valid copy-

right on the "Inverness" floor plans, raises the presumption of copyright infringement.

The defendants were unable to show independent creation. Notably, despite Janus' testimony that he had designed literally hundreds of homes and despite testimony concerning well known industry standards, the drawings submitted by the defendants as examples of industry standards (and presumedly independent creation) bore little resemblance to the plans at issue. The evidence otherwise failed to convince this Court that the feature-by-feature identity between the Rutenberg "Inverness" plan and the Parrino's new home plans were the product of anything other than copying by the defendants.

Upon consideration of the evidence and law as discussed above, this Court finds that Joseph Parrino and Precision infringed upon Rutenberg's registered claim to copyright of the "Inverness" architectural drawings under the Copyright Laws of the United States, 17 U.S.C. sec. 501, *et seq.* The Court further finds that the infringement by Joseph Parrino, a fairly sophisticated individual with knowledge of the custom and practice in the trade as demonstrated by his previous experience in building homes by "subbing-out" the construction work, was willful.

The evidence failed to place the actual "Inverness" brochures in Precision's hands. However, as Janus had worked in the industry and was or should have been acquainted with the various unique Rutenberg features, the Court finds that his conduct, while not willful, was culpable beyond mere negligence.

The evidence failed to demonstrate infringement, willful or otherwise by Elenora Parrino.

Although the plaintiffs presented testimony alleging $20,000 in lost profits because of infringement by the defendants, they are seeking statutory damages under 17 U.S.C. sec. 504(c). Accordingly, in its discretion under that section, the court finds that Joseph Parrino is liable to the plaintiffs in the amount of $5,000 for his willful infringement; Precision is liable to the plaintiffs in the amount of $750 for his infringement, and Elenora Parrino is not liable. In addition, as this Court finds that circumstances warrant, Joseph Parrino shall pay the plaintiffs' reasonable attorney's fees in this action as part of the costs in this action. *See* 17 U.S.C. sec. 505. The plaintiffs shall submit a memorandum in support of said fees with the bill of costs, keeping in mind those factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). Other costs shall be shared by defendants Joseph Parrino and Precision.

The defendants are ordered to deliver up to the plaintiffs, any and all originals and copies of the drawings, or derivatives thereof, in their possession, found to be infringing in this action.

The clerk is directed to enter judgment for the plaintiffs and against Joseph Parrino in the amount of $5,000 plus attorneys' fees and one-half (½) of other costs; for the plaintiffs and against defendant Precision Drafting, Inc. in the amount of $750, plus one-half (½) of costs other than attorneys' fees.

As this Court finds that there was fault on the part of both Joseph Parrino and Precision Drafting, Inc., their cross-claims for indemnification are hereby DISMISSED.

IT IS SO ORDERED.