11-3298
Scholz Design v. Sard Custom Homes

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: February 23, 2012          Decided: August 15, 2012)

Docket No. 11-3298

------------------------------------

Scholz Design, Inc.,

Plaintiff-Appellant,

- v -

Sard Custom Homes, LLC, Prudential Connecticut Realty,[*] &
Coldwell Banker Residential Real Estate, LLC,

Defendants-Appellees.

------------------------------------

Before:    LEVAL, SACK, and HALL, Circuit Judges.

Appeal from a judgment of the United States District Court for the District of Connecticut (Janet Bond Arterton, Judge) granting defendants' motion to dismiss. We conclude that the district court erred in deciding that because the architectural drawings at issue did not contain a level of detail

_____

[*] By letter dated October 25, 2011, counsel for Prudential filed a letter with the Clerk of Court informing the Court that "the issues being pursued in the appeal do not involve matters that were litigated by Prudential before the District Court." Letter dated October 25, 2011, from Patrick M. Fahey, Esq. to Office of the Clerk, at 1. Prudential has thereafter not participated in this appeal, although it remains technically a party to it listed as a defendant-appellee in the caption.

sufficient to enable construction of homes based on them, they were not protected by the Copyright Act.  We also conclude that the drawings are sufficiently original to receive protection as "pictorial, graphic, [or] sculptural works," 17 U.S.C. § 102(a)(5), under the Copyright Act, and we reverse the judgment of the district court insofar as it held otherwise.  Because the court dismissed the plaintiff's claims for breach of contract and violations of the Digital Millennium Copyright Act based on its conclusion that the drawings were not protected by copyright, we vacate its dismissal of those claims and to that extent remand the case to the district court.

Reversed in part; vacated and remanded in part.

Appearances:        LOUIS K. BONHAM, Osha Liang, LLP, Austin, TX (Holly M. Polglase, Hermes, Netburn, O'Connor & Spearing, P.C., Boston, MA, on the brief) for Plaintiff-Appellant.

JOHN J. ROBACYNSKI, Alan J. Rome, Rome, Clifford, Katz & Koerner, LLP, Hartford, CT, for Defendant-Appellee Sard Custom Homes, LLC.

THOMAS J. FINN, Paula Cruz Cedillo, McCarter & English LLP, Hartford, CT, for Defendant-Appellee Coldwell Banker Residential Real Estate, LLC.

SACK, Circuit Judge:

## BACKGROUND

The plaintiff-appellant, Scholz Design, Inc. ("Scholz"), alleges that three front-elevation[1] architectural drawings of homes it designed in the late 1980s were copied and posted on various websites by the defendants in violation of Scholz's copyrights. The plaintiff also makes related claims for breach of contract and violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, et seq.

Scholz created technical drawings, or blueprints, for three homes -- which it called the "Springvalley A," "Wethersfield B," and "Breckinridge A" -- and submitted them to the Copyright Office in 1988 and 1989 together with the front elevation drawings that are the subject of this suit, each showing the appearance of the front of the houses surrounded by lawn, bushes, and trees. See Scholz Design, Inc. v. Sard Custom Homes, LLC, No. 11-3298, Joint Appendix ("J.A.") at 73, 76, 87 (2d Cir. Oct. 11, 2011).[2] Scholz was granted registration of copyrights based on all these submissions.

---

[1] An "elevation" is a "scale drawing of the side, front, or rear of a structure." Am. Heritage Dictionary 580 (4th ed. 2006).

[2] These images and the allegedly infringing uses at issue may be viewed at http://www.ca2.uscourts.gov/scholzdesign.htm.

3

In February 1992, Scholz and Sard Custom Homes ("Sard") entered into an agreement (the "Builder Agreement I") permitting Sard to construct homes using Scholz's home plans, including these three designs. See Builder Agreement I at 1-2, J.A. 97-98. The three-year contract required Sard to pay Scholz $1 per square foot of each home constructed using its plans, up to a maximum of $50,000 a year. Id. at §§ 5,9,10. Scholz and Sard renewed the contract for another three-year term in 1995 (the "Builder Agreement II"). Builder Agreement II at 1-2, J.A. 100-101. Both agreements required that Sard not "copy or duplicate any of the [Scholz] materials nor . . . [use them] in any manner to advertise or build a [Scholz Design] or derivative except under the terms and conditions of the agreement." Builder Agreement I at 1; Builder Agreement II at 1.

Scholz alleges that, after the termination of Scholz's agreement with Sard and in a manner not permitted by the agreement, Sard and co-defendant Prudential Connecticut Realty ("Prudential") posted copies of Scholz's copyrighted drawings of the Springvalley and Wethersfield homes on two different websites to advertise Sard's "ability" to build the homes. Am. Compl. ¶ 15. Scholz also alleges that Sard and co-defendant Coldwell Banker Residential Real Estate, Inc. ("Coldwell Banker") copied Scholz's copyrighted image of the Breckinridge design on Coldwell Banker's website for the same unpermitted purpose. Scholz

4

further alleges that Sard, Prudential, and Coldwell Banker "may have used, reproduced, displayed, distributed, marketed or advertised" those designs through other means in addition to the websites identified.  Am. Compl. ¶¶ 18,33.

In October 2010, Scholz brought suit against the three defendants in the United States District Court for the District of Connecticut.  The February 1, 2011, amended complaint alleges two counts of copyright infringement, two violations of the Lanham Act, 15 U.S.C. § 1051 et seq., breach of contract, and violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 et seq.  Am. Compl. ¶¶ 9-72.

The defendants moved to dismiss the complaint, arguing inter alia that the pictures "could not have been copyrighted as architectural works because, the copyrights having been granted in 1988 and 1989, they predate the [Architectural Works Copyright Protection Act ("AWCPA"), Pub. L. No. 101-650, tit. VII (1990)] and that the conceptual nature of these depictions means that they are not protected by Scholz's copyright because they contain insufficient detail from which a building could be constructed." Scholz Design, Inc. v. Sard Custom Homes, LLC, No. 10-cv-1681, 2011 WL 2899093, at *2, 2011 U.S. Dist. LEXIS 76663, at *6 (D. Conn. July 15, 2011).  The district court (Janet Bond Arterton, Judge) agreed.  The court, in its "Ruling on Motions to Dismiss," reasoned that "copyright protection extends to the component

5

images of architectural designs to the extent that those images allow a copier to construct the protected design," and therefore "the copied images do not fulfill the intrinsic function of an architectural plan and thus the act of copying them does not violate any right protected by a copyright for architectural technical drawings." Id. at *3, 2011 U.S. Dist. LEXIS 76663, at *9.

Because it concluded that the plaintiff's amended complaint did not state a claim for copyright infringement, the district court also granted defendants' motion to dismiss claims alleging violations of the DMCA and breach of contract, which, in the district court's view, required that the plaintiff have a valid copyright infringement claim.[3] Id. at *4, 2011 U.S. Dist. LEXIS 76663, at *14.

The plaintiff appeals.

---

[3] The district court also dismissed two claims brought under the Lanham Act. See Scholz Design, 2011 WL 2899093, at *3-*4, 2011 U.S. Dist. LEXIS 76663, at *6-*8. The plaintiff does not appeal the dismissal of those claims, which were brought against all defendants. This accounts for Prudential's withdrawal from these proceedings -- Prudential had only filed a motion to dismiss in the district court with regard to the Lanham Act claims, and did not ask for dismissal of the copyright infringement, breach of contract, or DMCA claims against it. See note *, supra.

6

**DISCUSSION**

**I.  Standard of Review**

We review a district court's grant of a motion to dismiss de novo, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.  Flagler v. Trainor, 663 F.3d 543, 546 n.2 (2d Cir. 2011); Fed. R. Civ. P. 12(b)(6).

**II.  Copyright Infringement**

In order to demonstrate copyright infringement, a plaintiff must show ownership of a valid copyright and copying of the protectable elements of the copyrighted work.[4]  See Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc., 290 F.3d 98, 109 (2d Cir. 2002).  A certificate of copyright registration is prima facie evidence of ownership of a valid copyright, but the alleged infringer may rebut that presumption.  MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 192 (2d Cir. 2004) (citing 17 U.S.C. § 410(c)).  To qualify for copyright protection, a work must be original -- that is, it must be independently created by

---

[4]  This appeal and the district court's decision focus on whether the drawings at issue are properly subject to copyright protection, rather than whether they have been copied.  Indeed, during the oral argument on the motion to dismiss before the district court, the court assumed that the defendants "just cut and pasted [the drawings] on to the[] website[s] for purposes of this motion."  Transcript of Oral Argument on Mot. to Dismiss, Scholz Design, Inc. v. Sard Custom Homes LLC, No. 10-cv-1681, at 21 (D. Conn. Sept. 12, 2011), ECF No. 78.

7

the author and possess "at least some minimal degree of creativity." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991). The work need not be "particularly novel or unusual." Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133, 135 (2d Cir. 2004). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Feist, 499 U.S. at 345 (citation and internal quotation marks omitted).

The defendants' principal argument, with which the district court agreed, was that the allegedly infringed drawings were not entitled to copyright protection because they lacked sufficient detail to allow for construction of the homes depicted. We disagree. Copyright protection of a pictorial work, whether depicting a house, or a flower, or a donkey, or an abstract design, does not depend on any degree of detail. The rights Scholz claims in this suit derive from the general copyright law and not from the AWCPA, which has no relevance to the suit.

A. Copyright for Pictorial Works

Scholz's copyright allegations are straightforward: It created three separate original drawings (depicting homes), registered them with the Copyright Office, and the defendants

8

without authorization made exact copies of those drawings on their websites.  Nothing more is required for a copyright claim.

The district court apparently was of the view that, because the drawings were architectural, something more was required for their copyright protection.  It is black-letter law, however, that courts accept as protected "any work which by the most generous standard may arguably be said to evince creativity."  1-2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 2.08 (2012).  Justice Holmes explained more than a century ago that "[i]t would be a dangerous undertaking for persons trained only to the law to constitute themselves the final judges of the worth of pictorial illustrations."  <u>Bleistein v. Donaldson Lithographing Co.</u>, 188 U.S. 239, 251 (1903).  As noted above, the only requirement for copyrightability of a work is that it "possesses at least some minimal degree of creativity . . . no matter how crude, humble or obvious it might be."  <u>Feist</u>, 499 U.S. at 345.

While we have not had occasion to consider a case presenting precisely the same issue as does this one,[5] we have

---

[5] Most cases examining alleged infringement deal with thornier issues than whether a work is sufficiently creative to be protected by copyright, such as whether an "inexact copy" is substantially similar enough to constitute infringement, see <u>Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.</u>, 338 F.3d 127, 134 (2d Cir. 2003) ("[T]he defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent

said in affirming summary judgment for the defendants based on alleged copying of certain conceptual elements of an architectural sketch that, although the copying of "ideas" at issue there did not constitute infringement, "we do not mean to suggest that, in the domain of copyrighted architectural depictions, only final construction drawings can contain protected expression." Attia v. Soc. of N.Y. Hosp., 201 F.3d 50, 57 (2d Cir. 1999).

We see no reason why Scholz's drawings depicting the appearance of houses it had designed should be treated differently from any other pictorial work for copyright purposes. Andrew Wyeth and Edward Hopper were famous for their paintings of houses, and Claude Monet for paintings of the Houses of Parliament and of Rouen Cathedral. None of these depictions of buildings were sufficiently detailed to guide construction of the buildings depicted, but that would surely not justify denying

only when numerous aesthetic decisions embodied in the plaintiff's work of art . . . are considered in relation to one another."), or whether elements of an allegedly infringed work that have been appropriated are facts or ideas not amenable to copyright, see Sparaco v. Lawler, Matusky, Skelly Engineers LLP, 303 F.3d 460, 467 (2d Cir. 2002) ("To the extent that the site plan sets forth the existing physical characteristics of the site . . . it sets forth facts; copyright does not bar the copying of such facts."); Attia v. Soc. of N.Y. Hosp., 201 F.3d 50, 56 (2d Cir. 1999) ("We may assume with Plaintiff that the ideas taken, or at least some of them, are powerful, dynamic ideas of immense value . . . . Under the law of copyright, however, the power of an idea does not improve the creator's right to prevent copying."). Those issues are not presented by this appeal.

them copyright protection.  If an exact copy of Scholz's drawings was made by the defendant, as alleged, and as appears to be the case based on the evidence submitted with the complaint, that would appear to constitute infringement.

B.  Copyright Registration

The defendants argue that Scholz's pictorial representations of the houses are not entitled to copyright protection because its certificates of registration referred to "architectural technical drawings" as the "nature of authorship," and in the "nature of work" sections referred to "blueprints." See, e.g., Certificate of Copyright at 1, J.A. 42.  This was significant, according to the defendants, because regulations promulgated under the AWCPA, governing the copyright extended to buildings based on copyrighted architectural plans, provide that "[w]here dual copyright claims exist in technical drawings and the architectural work depicted in the drawings, any claims with respect to the technical drawings and architectural work must be registered separately."  37 C.F.R. § 202.11(c)(4).

Scholz's registration of the subject drawings under section 102(a)(5) occurred prior to passage of the AWCPA.  Scholz accordingly was not seeking, and did not receive, registration under that later expansion of the copyright law.  Its registration of its drawings did not become invalid as the result

11

of the subsequent passage of the AWCPA.  That later expansion of the copyright law is not involved in this suit.

C.  The Architectural Works Copyright Protection Act

We think that the district court's ruling likely stemmed from a misunderstanding regarding the relationship both before and after enactment of the AWCPA between the scope of protection for pictorial works such as these drawings under the Copyright Act, and that afforded architectural works under the Copyright Act.

While we think this to be a straightforward case of infringement, the district court did not.  The defendants contended, and the district court agreed, that because the drawings at issue were "architectural drawings," something more was required of them for copyright protection than would be required for any other "pictorial, graphic, or sculptural work" under section 102(a)(5).  Indeed, architectural works are currently afforded special status under the law.  That special status is, however, irrelevant for purposes of this case because Scholz is not alleging infringement under the AWCPA, but under the pre-existing protection of the Copyright Act for pictorial works.  The fact that Scholz's drawings might or might not be protected under the AWCPA, depending on various factors, does not deprive them of the protection they have as pictorial works regardless of those factors.

12

Prior to the enactment of the AWCPA, while architectural structures themselves did not receive copyright protection, architectural plans, blueprints, and technical drawings, as well as original, creative sketches of the type at issue here, were indeed covered under the Copyright Act's protection of "pictorial, graphic, and sculptural works."  17 U.S.C. § 102(a)(5).[6]

Scholz contends that the drawings are protected under section 102(a)(5), and not under section 102(8), which, as part of the AWCPA, added protection for "architectural works."[7] According to Scholz, the AWCPA is therefore inapplicable.  We agree.  The AWCPA did not affect the copyright protection that section 102(a)(5) has long extended to architectural plans, drawings, and blueprints.

> Historically, copyright law provided limited
> protection to works of architecture.

---

[6] In or about 1990 the United States became a signatory to the Berne Convention, which required copyright protection for constructed buildings.  The AWCPA fulfilled this obligation.  <u>See Leceister v. Warner Bros.</u>, 232 F.3d 1212, 1226 (9th Cir. 2000) (Fisher, <u>J.</u>, dissenting) ("The sole purpose of legislating at this time is to place the United States unequivocally in compliance with its Berne Convention obligations." (quoting H.R. Rep. No. 101-735, at 20)).

[7] As the defendants acknowledge, because the Breckinridge drawings and plans were published two years prior to the passage of the AWCPA, the home itself would not have even been subject to protection as an architectural work.  37 C.F.R. § 202.11(d)(3)(i).  The record does not reflect whether the other homes were ever registered under section 102(8).

Architectural plans, while not explicitly mentioned in the Copyright Act of 1976, were covered under a provision affording protection to "pictorial, graphic, and sculptural works."  But architectural structures themselves were afforded virtually no protection.

. . .

[After the AWCPA,] the holder of a copyright in an architectural plan . . . has two forms of protection, one under the provision for an "architectural work" under 17 U.S.C. § 102(a)(8), and another under the provision for a "pictorial, graphical, or sculptural work" under 17 U.S.C. § 102(a)(5).

T-Peg, Inc. v. VT. Timber Works, Inc., 459 F.3d 97, 109-10 (1st Cir. 2006) (citations omitted); see also Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1228 n.8 (11th Cir. 2008) ("[T]he scope of copyright protection for architectural plans registered under § 102(a)(5) was unaffected by the AWCPA."); H.R. Rep. No. 101-735 (1990), reprinted in 1990 U.S.C.C.A.N. 6935, 6950-51.  ("Protection for architectural plans, drawings, and models as pictorial, graphic, or sculptural works under section 102(a)(5) . . . is unaffected by this bill. . . .  The bill's intention is to keep [the copyright in the architectural work and the copyright in plans and drawings] separate.  An individual creating an architectural work by depicting that work in plans or drawing will have two separate copyrights, one in the architectural work (section 102(a)(8)), the other in the plans or drawings (section 102(a)(5)).").

14

Thus, prior to passage of the AWCPA courts had held that use of copyrighted architectural plans to construct a building would not constitute infringement, but then as now, copying those plans would. See Nat'l Med. Care, Inc. v. Espiritu, 284 F. Supp. 2d 424, 435 (S.D. W.Va. 2003) (explaining that prior to the passage of the AWCPA "most courts agree[d] that copying a structure depicted in plans, without copying the plans themselves, [was] not copyright infringement," but that "an unauthorized copy of an architectural plan infringes on a technical drawing copyright"); see also Imperial Homes Corp. v. Lamont, 458 F.2d 895, 899 (5th Cir. 1972) (copyrighted architectural plans do not confer exclusive right to reproduce the depicted building); Nat'l Med. Care, 284 F. Supp. 2d at 435 ("[A]n as-built structure or feature cannot be an infringing copy of a technical drawing."). The district court summarized this case law correctly when it explained that "[t]he rule which emerges from [the pre-AWCPA] cases is that one may construct a house which is identical to a house depicted in copyrighted architectural plans, but one may not directly copy those plans and then use the infringing copy to construct the house." Scholz Design, 2011 WL 2899093, at *2, 2011 U.S. Dist. LEXIS 76663, at *8 (internal quotation marks and emphasis omitted). As a commentator recently explained:

15

> Even though our copyright statutes were silent about architecture until 1990, it was well established that plans, blueprints and models were copyrightable writings under the 1909 Act's category of "drawings or plastic works of a scientific or technical character," and then as "pictorial, graphic, and sculptural works" under the 1976 Act. The scope of an architect's copyright protection was, however, quite limited. The unauthorized copying of plans or blueprints constituted infringement, but most authorities concluded that plans were not infringed by using them, without the architect's permission, to construct the building they depicted. Moreover, the prevailing view was that an architect's rights did not extend to the actual building derived from his or her plans. A building, as a useful article, could be protected by copyright only to the extent it had artistic features that could be identified separately from, and were capable of existing independently of, the structure's utilitarian aspects.

David E. Shipley, The Architectural Works Copyright Protection Act at Twenty: Has Full Protection Made a Difference? 18 J. Intell. Prop. L. 1, 3 (2010) (footnotes omitted); see also Daniel Su, Note, Substantial Similarity and Architectural Works: Filtering Out "Total Concept and Feel," 101 Nw. U. L. Rev. 1851, 1861, 1863 (2007) ("[A]rchitectural plans and drawings were protected under the Copyright Act of 1976. They fit comfortably within the definition of 'pictorial, graphic and sculptural works' . . . . However, copyrighted plans did not give the authoring architect the exclusive right to build the structure

16

depicted within the plans. . . .  [T]he AWCPA extend[ed] copyright protection to physical buildings.").

D.   The District Court Opinion

Sketches or drawings such as those allegedly infringed here, therefore, did receive protection before enactment of the AWCPA, although the architectural works they depicted did not. The district court seems to have misunderstood the import and relevance of this distinction in concluding that under section 102(a)(5), architectural sketches or drawings are required to include a certain level of detail to receive protection.  Where the complaint alleges unlawful copying of a pictorial work registered under section 102(a)(5), there is no requirement of any level of detail.

The district court relied principally on three other cases in determining that the drawings at issue were not copyrightable.  See Scholz, 2011 WL 2899093, at *3, 2011 U.S. Dist. LEXIS 76663, at *9 ("Under Attia, as well as Jones, and Lamont, copyright protection extends to the component images of architectural designs to the extent that those images allow a copier to construct the protected design." (citations omitted)). First, the court looked to Attia, which examined whether the defendants had infringed the plaintiff's drawings of a proposed expansion of New York Hospital.  201 F.3d at 57.  The plaintiff had submitted a plan for the hospital's modernization.  He

17

prepared a series of preliminary drawings and sketches illustrating his plan, which would have expanded the hospital through a new building constructed in the airspace over the FDR Drive in New York City. Id. at 52. The plaintiff and his firm were not selected to be the architects for the plan. Eli Attia later saw a New York Times article discussing a similar design. He brought a copyright infringement suit against the architect who had created that plan alleging infringement of his drawings. Id. The district court granted summary judgment to the defendants after concluding that their design and plaintiff's design could not be considered "substantially similar" as a matter of law. 201 F.3d at 53.

For purposes of that appeal, we assumed that the similarities between the plaintiff's and defendants' drawings were indeed attributable to copying.

> The problem underlying Plaintiff's claim of copyright infringement, however, is that not all copying from copyrighted material is necessarily an infringement of copyright. There are elements of a copyrighted work that are not protected even against intentional copying. It is a fundamental principle of our copyright doctrine that ideas, concepts, and processes are not protected from copying. . . . A copyright thus protects not the author's ideas, but only her expression of them.

Id. at 53-54.

"The problem of distinguishing an idea from its expression is particularly acute when the work of 'authorship' is of a functional nature, as is a plan for the accomplishment of an architectural or engineering project." Id. at 55. For example, "generalized notions of where to place functional elements, how to route the flow of traffic, and what methods of construction and principles of engineering to rely on" are ideas, and can be appropriated by others without infringing on a copyright. Id. We determined that the alleged similarities of the allegedly protected work to the allegedly infringing work, were "concepts and ideas," and "barely a first step toward the realization of a plan." Id. at 55-56. While many of the ideas and placements were similar, overall, "Defendants' design has very little in common with Plaintiff's." Id. at 57.

The district court in the case before us concluded that the Attia court's reference to preliminary concepts and ideas meant that non-detailed drawings could not be subject to copyright protection. But Attia never alleged that his sketches themselves were unlawfully copied. Instead he contended that certain elements of his sketches were incorporated into the allegedly infringing plans, such as placement of the hospital expansion above the FDR Drive. We in no way suggested that the plaintiff's drawings in Attia did not enjoy copyright protection. Our ruling was merely that, assuming the defendant copied

19

something from the plaintiff's drawings, what was copied was only unprotected ideas, and not the plaintiff's protected expression of those ideas. That ruling simply does not support the district court's analysis here.

The plaintiff here does not allege, as did Attia, that some "concept" or "idea" reflected in his sketches was appropriated –- he alleges that the entire sketch was copied. Attia therefore has little relevance to the case before us. It does not suggest that in the domain of architectural drawings protection cannot be afforded to preliminary or conceptual renderings.

The district court also relied on Robert R. Jones Assocs. v. Nino Homes, 858 F.2d 274, 280 (6th Cir. 1988), which examined under pre-AWCPA law the alleged infringement of architectural plans effected by copying those plans and then constructing a building based on them. "The rule which emerges . . . is that one may construct a house which is identical to a house depicted in copyrighted architectural plans, but one may not directly copy those plans and then use the infringing copy to construct the house." Id. at 280.

The circuit court ruled: "[O]ne may construct a house which is identical to a house depicted in copyrighted architectural plans, but one may not directly copy those plans and then use the infringing copy to construct the house." Id.

20

The district court in the case before us appears to have understood Robert R. Jones to stand for the proposition that there is an infringement only when a plan is (1) copied and (2) used to construct a home. We disagree.

Robert R. Jones does not stand for the proposition that no infringement can occur without construction. The last ten words of the sentence quoted above (about using the infringing copies to construct) were surplusage. What the court seems to have meant was that, while the construction of the home based on copyrighted plans is not an infringement (under the pre-AWCPA law), the copying of the plans is an infringement. The copying of the drawings constituted infringement regardless of whether one goes on to construct the house.

Finally, in Lamont, upon which the district court also relied, the court concluded that the copying of the floorplan of a home from copyrighted drawings in a promotional brochure would be an infringement.

> [N]o copyrighted architectural plans . . .
> may clothe their author with the exclusive
> right to reproduce the dwelling pictured.
> However, nothing . . . prevents such a
> copyright from vesting the law's grant of an
> exclusive right to make copies of the
> copyrighted plans so as to instruct a would-
> be builder on how to proceed to construct the
> dwelling pictured.

458 F.2d at 898-99. In remanding the case to the district court, the court of appeals explained that "[t]he exclusive right to

21

copy what is copyrighted belongs to the architect, even though the plans give him no unique claim on any feature of the structure they detail.  If it is determined . . . that the [defendants] copied the floor plan set forth in the promotional booklet distributed by [the plaintiff], then this copying would constitute an infringement of [the plaintiff's] copyright privileges."  Id. at 899 (emphasis in original).

The district court in the case before us inferred that infringement could only occur if the plans were sufficiently detailed to allow for construction, perhaps because in Lamont the "floor plan" was allegedly detailed enough to do so.  That court, however, like the court in Robert S. Jones, did not indicate that a less-detailed plan or drawing would not be entitled to copyright protection.

In sum, the district court concluded that architectural drawings were required to contain sufficient detail to allow for construction in order to receive Copyright Act protection.  There is no such requirement, however, when the claim of copyright is for a "pictorial, graphic, or sculptural work[]" under section 102(a)(5).  All that is required is independent creation and originality.  See John Wieland Homes & Neighborhoods, Inc. v. Poovey, No. 3:03CV168-H, 2004 WL 2108675, at *5, 2004 U.S. Dist. LEXIS 21730, at *14 (W.D.N.C. Aug. 2, 2004) (stating that "copyright protection extends to simplified floor plans, that is,

22

promotional cut sheets, of copyrighted architectural plans," and therefore concluding that the defendant was liable when a draftsman he hired essentially copied the cut-sheet in preparing plans for a home); see also Donald Frederick Evans and Assocs. v. Cont'l Homes, Inc., 785 F.2d 897, 904-05 (11th Cir. 1986) ("[C]onstruction of a substantially identical residential dwelling is not prohibited by the existence of a copyright in the architectural drawings for the original dwelling, but . . . if the builders of the substantially identical structure copied the floor plan set forth in a promotional booklet distributed by the builder of the original, then this copying would constitute infringement of the original builder's copyright privileges." (citation and footnote omitted)); Lamont, 458 F.2d at 899 ("If it is determined upon remand that the [defendants] copied the floor plan set forth in the promotional booklet distributed by [the plaintiffs], then this copying would constitute an infringement of [the plaintiff's] copyright privileges."); Arthur Rutenburg Corp. v. Parrino, 664 F. Supp. 479, 481 (M.D. Fla. 1987) (ruling that the copying of a floor plan constituted copyright infringement).

Although we have not directly addressed the question with which the district court grappled here, we have twice explained that architectural technical drawings might be subject to copyright protection even if they are not sufficiently

23

detailed to allow for construction. See Attia, 201 F.3d at 57 ("[W]e do not meant to suggest that, in the domain of copyrighted architectural depictions, only final construction drawings can contain protected expression."); Sparaco, 303 F.3d at 469 ("We do not mean to imply that technical drawings cannot achieve protected status unless they are sufficiently complete and detailed to support actual construction.").

We see this, then, as a straightforward case of copyright infringement. The plaintiff created original drawings which were properly registered with the copyright office. The defendants allegedly used exact copies of those drawings without permission. Nothing more is required in order to state a claim for copyright infringement. The district court's grant of a motion to dismiss these claims is therefore reversed.

**III. Fair Use**

The defendants contend that even if Scholz had a valid copyright in the drawings, the defendants are not liable for infringement because their usage of the images constituted fair use. "[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. Four factors must be considered in deciding whether a particular use is "fair": "(1) the purpose and character of the use, including

24

whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

The district court declined to address this argument, having concluded that in any event Scholz had not stated a valid copyright infringement claim. Scholz Design, 2011 WL 2899093, at *3 n.2, 2011 U.S. Dist. LEXIS 76663, at *10 n.2. "It is our settled practice to allow the district court to address arguments in the first instance." Fulton v. Goord, 591 F.3d 37, 45 (2d Cir. 2009) (internal quotation marks omitted). On remand, the defendants may choose to raise this defense again. We intimate no views as to the proper outcome of such an inquiry.

**IV. DMCA and Breach of Contract Claims**

The district court dismissed both of these claims after concluding that they required Scholz to "have a valid copyright claim." Scholz Design, 2011 WL 2899093, at *4, 2011 U.S. Dist. LEXIS 76663, at *14. The dismissal of the breach of contract claim was error. Scholz alleged that Sard used Scholz's drawings in unauthorized ways long after their agreements had expired. This breach of contract claim did not depend on Scholz's possession of a valid copyright. We therefore vacate the

25

district court's dismissal of the breach of contract claim.  In addition, because we vacate the district court's dismissal of the copyright claim, we also vacate its dismissal of the DMCA claim. Again, we suggest no views on our part as to the proper outcome of such an inquiry.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed in part, and vacated and remanded in part for further proceedings.  Costs to Scholz against Sard and Coldwell Banker.