**LUMETRICS, INC., Plaintiff,**

v.

**Todd BLALOCK, Defendant.**

**No. 14–CV–6161 EAW.**

United States District Court,
W.D. New York.

Signed June 3, 2014.

---

Andrew Peter Zappia, Richard A. McGuirk, LeClairRyan, Rochester, NY, for Plaintiff.

Steven E. Cole, LeClair Korona Giordano Cole LLP, Rochester, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### I. INTRODUCTION

After attempting unsuccessfully on two separate occasions to pursue litigation in New York State Court, Plaintiff Lumetrics, Inc. ("Lumetrics") filed this federal lawsuit purporting to allege a one-count copyright infringement claim against its former employee, defendant Todd Blalock ("Blalock"). Shortly after filing the federal lawsuit, Lumetrics filed a motion to obtain expedited discovery from both Blalock and non-party Bristol Instruments, Inc. ("Bristol"). (Dkt. 6, 7 & 8). Blalock opposed the motion for expedited discov-ery and filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. 20). Bristol filed a motion to intervene in the litigation and opposed the motion for expedited discovery. (Dkt. 11 & 22).

The federal complaint is broad and sweeping in its allegations, declaring that Blalock "in concert with his employer Bristol, has infringed and is continuing to infringe Lumetrics' exclusive rights as copyright owner by copying, preparing derivative works, and distributing copies of the Copyrighted Software (including both registered and unregistered works) without Lumetrics' permission or consent." (Dkt. 1 at ¶ 51). Lumetrics has attempted to backtrack from the expansive nature of those allegations in responding to Blalock's motion to dismiss, now contending that it really is only pursuing claims based upon Blalock's alleged bootleg copying of its registered copyrighted software. Moreover, despite the repeated references to Bristol in the complaint, Lumetrics argues that it is not asserting any claim against Bristol.

The allegations in the complaint are quite different from Lumetrics' characterization of its claims in its response to Blalock's motion to dismiss. While the narrowed claims articulated in Lumetrics' opposition papers may potentially state a valid claim for copyright infringement against Blalock, the wide-ranging allegations in the complaint fail to state a claim. It would not be appropriate for this Court to attempt to dissect a potentially viable copyright infringement claim from the allegations of the one-count complaint as currently drafted. In fact, Lumetrics has not filed any motion for leave to file an amended complaint, even though it arguably concedes that certain aspects of its allegations are not viable. As a result, Blalock's motion to dismiss is granted without prejudice. Because the complaint has been dis-

missed, the motions to intervene and for expedited discovery are denied without prejudice as moot.

## II. FACTUAL BACKGROUND

Lumetrics develops, leases, and sells instruments using advanced optical techniques to measure the physical dimensions of objects. (Dkt. 1 at ¶ 7). Blalock was employed as an officer of Lumetrics from March 2003 through December 2011, holding the position of Chief Technical Officer. (*Id.* at ¶ 2).

One of the instruments sold by Lumetrics is the OptiGauge device, which operates on interferometry principles and is utilized to measure such objects as contact lenses and intraocular lenses. (*Id.* at ¶ 8). During Blalock's employment, Lumetrics was developing a project known as "OptiGauge II," a more affordable version of the OptiGauge. (*Id.* at ¶ 10).

The complaint alleges that Lumetrics' interferometric measuring devices use sophisticated software developed by Lumetrics, consisting of both registered and unregistered copyrights. (*Id.* at ¶ 11 & Dkt. 1-1). The complaint does not distinguish between the software with registered copyrights and the software where the copyright registrations are pending; instead referring to the software collectively as "the Copyrighted Software." (*Id.*).

Lumetrics alleges that as former Chief Technical Officer, Blalock not only participated in the development and implementation of the Copyrighted Software, but he also had full access to the design and market studies surrounding the proposed OptiGauge II project. (*Id.* at ¶¶ 20–22, 25).

Blalock's employment with Lumetrics was terminated in October 2011. (*Id.* at ¶ 27). Blalock allegedly informed a coworker, Glen Hallit, that he had taken "the most recent version of that developed software (for Lumetrics' OptiGauge II optical interferometer project) with him when he left Lumetrics so that he could use it in the optical interferometer that he would make to compete with Lumetrics." (Dkt. 1–2 at ¶ 7). On April 3, 2012, six months after Blalock was terminated, he allegedly informed Mr. Hallit that he had successfully created a prototype of an optical interferometer. (Dkt. 1–2 at ¶ 11). Approximately five months later, and almost one year after the termination of his employment with Lumetrics, Blalock began working for Bristol in September 2012. (Dkt. 1 at ¶ 33).

Three months later, Bristol introduced its "157 Series Optical Thickness Gauge" interferometric measuring device. (*Id.* at ¶ 34). According to the complaint, Bristol had not previously sold interferometric devices. (*Id.* at ¶ 36). Plaintiff alleges that "Blalock, in concert with his employer Bristol, has infringed and is continuing to infringe Lumetrics' exclusive rights as copyright owner by copying, preparing derivative works, and distributing copies of the Copyrighted Software without Lumetrics' permission or consent." (*Id.* at ¶ 51). Although not alleged in the complaint, the papers submitted in connection with the pending motions indicate that as of April 28, 2014, Blalock is no longer employed by Bristol. (Dkt. 11–10 at ¶ 10). The circumstances surrounding Blalock's termination of employment with Bristol are unclear.

## III. PROCEDURAL BACKGROUND

Lumetrics filed this federal lawsuit on April 4, 2014. (Dkt. 1). On April 23, 2014, Lumetrics filed an emergency motion for expedited discovery contending that it needed narrowly tailored discovery to "determine the extent and scope of Mr. Blalock's use and misuse of Lumetrics copyrighted software, to enable Lumetrics to

demonstrate irreparable harm that Lumetrics will suffer and will form part of the basis for Lumetrics' request for a preliminary injunction." (Dkt. 6–1 at ¶ 4).

On April 29, 2014, Bristol filed a motion to intervene in the litigation. (Dkt. 11). Bristol submits that it should be permitted to intervene in the litigation pursuant to Fed.R.Civ.P. 24, and that upon being granted permission to intervene, it would file a motion to dismiss the complaint. (*Id.*). Bristol's intervention motion also reveals that, contrary to the impression created by Lumetrics' emergency motion for expedited discovery, the disputes between the parties have already been litigated for over a year in New York State Court.[1] Specifically, on April 5, 2013, Lumetrics sued Bristol and Blalock in New York State Supreme Court, Monroe County, alleging various state law claims for misappropriation of Lumetrics' software and trade secrets, breach of fiduciary duties, and breach of contract. (Dkt. 11–4). By Order and Judgment entered August 16, 2013, the New York State Supreme Court, Monroe County (Rosenbaum, J.), dismissed Lumetrics' complaint in its entirety without prejudice and denied leave to amend the complaint as no specific motion or cross-motion was filed seeking that relief. (Dkt. 11–5). Lumetrics then commenced a second lawsuit in New York State Supreme Court (Dkt. 11–6), but that lawsuit was also dismissed by Order of the New York State Supreme Court, Monroe County (Rosenbaum, J.), on December 6, 2013, without prejudice. (Dkt. 11–7).

Upon receipt of Bristol's motion to intervene, this Court conducted a teleconference on May 2, 2014, to discuss the scheduling of the pending motions. (Dkt. 19).

On May 12, 2014, Blalock filed a motion to dismiss (Dkt. 20), and Lumetrics filed its opposition to that motion on May 19, 2014 (Dkt. 25). In addition, on May 12, 2014, Lumetrics filed papers in opposition to Bristol's motion to intervene (Dkt. 21), and Bristol submitted papers in opposition to Lumetrics' motion for expedited discovery (Dkt. 22). Additional reply papers were filed by the parties on May 19, 2014 (Dkt. 23 & 24), and oral argument was held on May 27, 2014. (Dkt. 29).

## IV. DISCUSSION

■ "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Here, Lumetrics attempts to assert a single cause of action for copyright infringement. (Dkt. 1 at ¶¶ 47–54). A plaintiff must allege the following elements in order to state a valid claim for copyright infringement: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Blalock attacks Lumetrics' copyright infringement claim con-

---

1. Although the Court does not reach the issue of whether Lumetrics is entitled to expedited discovery in view of the dismissal of the complaint without prejudice, the Court notes its skepticism concerning the appropriateness of an emergency motion for expedited discovery given the length of time that the parties have been litigating their disputes. While Lume-

trics now relies upon information from its employee, Glen Hallit, that was not included in the state court complaints, Mr. Hallit has been employed by Lumetrics since April 2008, and he was apparently aware of the information regarding Blalock's alleged wrongful conduct as far back as 2011 or 2012. (Dkt. 1–2 at ¶¶ 2, 4).

tending that it fails to sufficiently allege each of these elements.

### A.  Ownership of a Valid Copyright

Blalock argues for dismissal of the complaint on the ground that Lumetrics bases its copyright infringement claim on twelve separate software programs, only five of which are registered.  According to Blalock's argument, the Copyright Act precludes any claim for copyright infringement unless the work allegedly infringed is the subject of a copyright registration.

Lumetrics argues that there is conflicting case law regarding whether registration of all the copyrights is required, but that "in an effort to move this case forward" Lumetrics will "withdraw" the unregistered copyrights from the case.  (Dkt. 25 at 9 n. 3).

■ The Copyright Act provides as follows: "no civil action for infringement of the copyright ... shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  District courts in the Second Circuit require that a plaintiff "either hold a valid copyright registration or have applied and been refused a registration as a prerequisite to filing a civil claim."  *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g, Co.,* No. 09 CV 2669(LAP), 2012 WL 1021535, at *2, 2012 U.S. Dist. LEXIS 42791, at *5 (S.D.N.Y. Mar. 26, 2012); *see also Palatkevich v. Choupak,* No. 12 Civ. 1681(CM), 2014 WL 1509236, at *9, 2014 U.S. Dist. LEXIS 10570, at *28 (S.D.N.Y. Jan. 24, 2014) (granting defendant's Rule 12(b)(6) motion to dismiss the copyright claims because the plaintiffs failed to allege in the complaint that they held copyright registrations in the software works); *Accurate Grading Quality Assurance, Inc. v. Thorpe,* No. 12 Civ. 1343(ALC), 2013 WL 1234836, at *7, 2013 U.S. Dist. LEXIS

42760, at *20 (S.D.N.Y. Mar. 26, 2013) ("While not a strictly jurisdictional requirement, section ... 411(a) nonetheless requires copyright registration as a precondition to ... copyright claims."); *Psihoyos v. John Wiley & Sons, Inc.,* No. 11 Civ. 1416(JSR), 2011 WL 4916299, at *2, 2011 U.S. Dist. LEXIS 120204, at *5 (S.D.N.Y. Oct. 13, 2011) ("The mere pendency of an application is, however, insufficient to satisfy section 411's registration requirement, which the Supreme Court has determined to be an absolute 'precondition' to suit."); *Sci. Computing Assocs., Inc. v. Warnes,* No. 07–CV–6351, 2011 WL 1327398, at *1, 2011 U.S. Dist. LEXIS 36885, at *4 (W.D.N.Y. Apr. 5, 2011) (dismissing copyright infringement claim where defendant conceded it did not meet the registration requirement under § 411(a)); *K–Beech, Inc. v. Does 1–29,* No. CV 11–3331(JTB)(ETB), 2011 WL 4401933, at *1, 2010 U.S. Dist. LEXIS 143728, at *4 (E.D.N.Y. Sept. 19, 2010) ("[S]ubmission of an application for copyright registration does not satisfy the registration precondition of § 411(a).").

■ Relying upon the Supreme Court's decision in *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010), Lumetrics argues that the law is unclear concerning whether registration of the software at issue is required.  (Dkt. 25 at 9 n. 3).  In *Reed Elsevier,* the Supreme Court held that the registration requirement is a precondition to suit, but it is not jurisdictional.  559 U.S. at 157, 130 S.Ct. 1237.  The Supreme Court's decision did not alter the rule in the Second Circuit that section 411's registration requirements must be alleged in order to properly plead a claim of copyright infringement.  *See Muench,* 2012 WL 1021535, at *5, 2012 U.S. Dist. LEXIS 42791, at *14–15 ("[B]oth before and after *Reed Elsevier*" a plaintiff must either have

registered a valid copyright or "have applied and been refused a registration."); *K–Beech*, 2011 WL 4401933, at *1 n. 2, 2010 U.S. Dist. LEXIS 143728, at *5 n. 2 ("Although *Reed Elsevier* overruled these cases to the extent that they held that jurisdiction was lacking, it did not affect the holdings that a work with a pending application is not a registered work within the meaning of Section 411(a)."). In other words, "[a] pending application does not suffice." *Muench*, 2012 WL 1021535, at *5, 2014 U.S. Dist. LEXIS 42791, at *14.

■ Here, the complaint makes no distinction between the registered and unregistered copyrights. Rather, it collectively defines all the copyrighted software as "the Copyrighted Software." (Dkt. 1 at ¶¶ 11–19). There is no separate cause of action based upon the registered works versus the unregistered works. Lumetrics alleges that Blalock "in concert with his employer Bristol, has infringed and is continuing to infringe Lumetrics' exclusive rights as copyright owner by copying, preparing derivative works, and distributing copies of the Copyrighted Software without Lumetrics' permission or consent." (*Id.* at ¶ 51) (emphasis added).

Lumetrics acknowledges that its claims for copyright infringement will not be pursued based upon the works where the applications for registration are merely pending (a total of seven of the twelve software programs that serve as the basis for Lumetrics' copyright infringement claims). Yet, it is impossible to distinguish Lumetrics' allegations based upon the registered copyrights versus the unregistered copyrights. As it stands now, the complaint alleges one cause of action for copyright infringement based upon "the Copyrighted Software" which includes both the registered copyrights and the unregistered copyrights. (*Id.* at ¶¶ 47–54).

Lumetrics' offer to simply "withdraw" the claims based upon the unregistered copyrights is not procedurally proper. Rather, the proper procedural course would have been for Lumetrics to file a cross-motion to amend the complaint to limit its claims to only the registered copyrights, but it did not file any such motion.

Blalock's counsel argued during oral argument that he questioned whether Lumetrics could, in good faith, assert a claim for copyright infringement based upon just the registered copyrights. At this point, that issue is not before the Court because no such claim has been asserted.

Lumetrics fails to state a copyright infringement claim based upon software that is not registered. Because it is impossible to separate Lumetrics' claims based upon software with registered copyrights from its claims based upon unregistered copyrights, and because no application was made by Lumetrics to amend its complaint to properly limit its claims to the registered copyrights, the complaint's one-count cause of action for copyright infringement necessarily fails to state a claim.

**B. Copying of Constituent Elements of the Work that are Original**

Blalock also bases its motion to dismiss on the argument that Lumetrics has failed to plead substantial similarity between the software used in Blalock's prototype and Bristol's 157 Series, and the protectable elements of Lumetrics' copyrighted software. In response, Lumetrics contends that substantial similarity is not required where there is direct evidence of copying and the alleged infringing work is a bootleg copy (versus a derivative work). According to Lumetrics, since it has direct evidence of Blalock's alleged copying, and since the alleged infringing work is an exact duplicate or literal copy of the copy-

righted work, then it does not need to allege substantial similarity.

"Post-*Iqbal,* the courts in this Circuit considering motions to dismiss copyright claims have held that a plaintiff with a valid copyright must allege that '(1) defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Ritani, LLC v. Aghjayan,* 880 F.Supp.2d 425, 441–42 (S.D.N.Y.2012) (quoting *LaChapelle v. Fenty,* 812 F.Supp.2d 434, 438 (S.D.N.Y. 2011)) (emphasis added) (even assuming the defendant copied the plaintiff's work, the defendant's copyright claim had to be dismissed absent a sufficient pleading of facts concerning how the works were substantially similar, "including identifying the protectable elements of the works as part of its claim."); *see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 69 (2d Cir.2010) (dismissing plaintiff's claim because the plaintiff failed to establish that a substantial similarity existed between the defendant's work and the protectable elements of the plaintiff's work, despite the assumption that actual copying of the works occurred); *Belair v. MGA Ent., Inc.,* 503 Fed.Appx. 65, 66 (2d Cir.2012) (where defendant did not dispute actual copying, plaintiff still required to allege substantial similarity to defeat summary judgment); *Well–Made Toy Mfg. Corp. v. Goffa Intern. Corp.,* 210 F.Supp.2d 147, 159 (E.D.N.Y.2002), *aff'd,* 354 F.3d 112 (2d Cir.2003) (despite showing of actual copying, court found judgment for defendant because plaintiff did not demonstrate substantial similarity between the works).

### 1. Physical Copying

■ "The plaintiff may prove defendant's actual copying either by direct evidence *or,* as is most often the case, by showing that (1) the defendant had access to the plaintiff's copyrighted work and (2) that defendant's work is substantially similar to the plaintiff's copyrightable material." *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 701 (2d Cir.1992) (emphasis added). *Cf.* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright,* § 13.01(B) (2014) (hereinafter "*Nimmer on Copyright*") (endorsing the notion that "substantial similarity" for the actual copying element would be more appropriately evaluated by "probative similarity"). Direct evidence is rarely available, and as a result, a plaintiff is typically required to prove the defendant had "access to the work and that the work is 'substantially similar' to the plaintiff's copyrighted material." *Jamison Bus. Sys., Inc. v. Unique Software Support Corp.,* No. CV 02–4887(ETB), 2005 WL 1262095, at *9, 2005 U.S. Dist. LEXIS 45480, at *24–25 (E.D.N.Y. May 26, 2005) (quoting *Altai,* 982 F.2d at 701). This is sometimes referred to as the "access and similarity" test.

■ In the rare circumstance where courts have found direct evidence of copying, "the [plaintiff is] not required to prove access and substantial similarity, since both can be inferred from evidence of direct and exact copying." *Jamison,* 2005 WL 1262095, at *9, 2005 U.S. Dist. LEXIS 45480, at *25 (finding printouts of the source code from original work and defendant's program evidenced direct copying); *see also Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992) (finding direct copying where defendant gave a copy of a photograph to Italian artisans with the explicit instruction to create a sculpture that was designed "as per photo"); *Bus. Trends Analysts, Inc. v. Freedonia Grp., Inc.,* 887 F.2d 399, 402–03 (2d Cir.1989) (finding evidence of direct copying "unmistakable" where comparison of two texts contained

same material). "Actual copying may be established by direct evidence, such as by defendant's admission or by an eyewitness account." *Well–Made Toy Mfg. Corp.*, 210 F.Supp.2d at 159.

■ Here, attached to Plaintiff's complaint is the affidavit of Mr. Hallit, who states that Defendant told him about plans to take software from Plaintiff and utilize the software to create a competing product. (Dkt. 1–2 at ¶¶ 5–6). Mr. Hallit also states that Plaintiff said he "took the most recent version of that developed software with him when he left Lumetrics so that he could use it in the optical interferometer that he would make to compete with Lumetrics." (*Id.* at ¶ 7). Further, Mr. Hallit states that he saw Defendant's home workshop, where Defendant was working on a prototype, and that Defendant texted him a photo of the prototype. (*Id.* at ¶¶ 10–11). Lumetrics correctly argues that this affidavit provides direct evidence of copying, such that it does not need to prove actual physical copying through the "access and similarity" test.

## 2. Actionable Copying

■ This does not end the inquiry, because not all copying constitutes illegal copyright infringement. *Nimmer on Copyright* § 13.01(B) (stating that, even where there is proof of actual copying, "copying as a legal proposition must still be established.... Moreover, substantial similarity remains an indispensable element of plaintiff's proof, even is cases (such as *Feist*) in which defendant does not contest factual copying."). In other words, even where there is actual physical copying (shown through direct evidence or indirect evidence of access and similarity), a plaintiff must also allege that there are legal consequences to defendant's copying because the defendant's work is substantially similar to the plaintiff's work. *La-*

*Chapelle*, 812 F.Supp.2d at 439; *see also Nimmer on Copyright*, § 13.03(A) ("Just as copying is an essential element of copyright infringement, so substantial similarity between the plaintiff's and defendant's works is an essential element of actionable copying.").

Lumetrics' complaint fails to allege that the software used in Blalock's prototype device or the Bristol 157 Series devices is substantially similar to Lumetrics' copyrighted works. Yet, Lumetrics argues that this failure is not fatal to its claims because substantial similarity is only required in cases of *"non-literal copying— i.e.,* 'When the alleged infringing work is not a duplicate of the copyrighted work....'" (Dkt. 25 at 8). According to Lumetrics:

"Because the Complaint alleges that Blalock copied the Copyrighted Software when he left Lumetrics (not that he modified the Copyrighted Software as he walked out of Lumetrics' offices) and because the Complaint alleges that Blalock put the Copyrighted Software in his prototype device (not that he put a modified version of the Copyrighted Software in his prototype device), the Complaint does not have to allege that Blalock's modification resulted in software that is substantially similar to the Copyrighted Software...."

(Dkt. 25 at 10–11) (emphasis added). In other words, according to Lumetrics, the focus should be on whether the software contained in the prototype device is an exact duplicate of the Lumetrics' software. If it is, then according to Lumetrics, there is no need to plead substantial similarity.

In support of this argument, Lumetrics relies on three cases and contends that those cases establish "the larger body of Second Circuit law" that substantial similarity is only required for non-literal copying. The cases relied upon by Lumetrics

include *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607 (7th Cir.1982), *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir.2005), and *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182 (2d Cir.2012). However, none of those cases actually hold that the substantial similarity requirement does not apply to literal copying.

*Atari* addressed the extent to which the copying at issue was an improper appropriation and determined that the district court's denial of the application for a preliminary injunction was clearly erroneous because the works were substantially similar. 672 F.2d at 620. In a footnote relied upon by Lumetrics, the Second Circuit cites to a legal article discussing the necessary analysis when the alleged infringing work is not a duplicate of the copyrighted work. *Id.* at 614 n. 6. However, that reference is by no means an endorsement of the notion that substantial similarity is only required in cases of non-literal copying.

*Island Software* appears to have involved bootleg copies of software. The court did not engage in a substantial similarity analysis. However, the lack of this analysis cannot be translated into a holding that the substantial similarity analysis is only required in cases of non-literal copying. Indeed, it is not clear that any of the parties even raised the issue of substantial similarity in that case, and the decision itself focuses on the proof required for a finding of willfulness. *Island Software*, 413 F.3d at 263–64.

Finally, *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182 (2d Cir. 2012), focused on whether the drawings at issue were subject to copyright protection, not on whether they had been copied, which was assumed for purposes of the motion. 691 F.3d at 193 n. 4.

In any event, the Court need not resolve whether Lumetrics can properly assert a copyright infringement claim based on literal copying without alleging substantial similarity because Lumetrics has alleged far more than just literal copying. The complaint contains expansive allegations concerning Blalock's alleged derivative works and the Bristol 157 Series devices, and those allegations do not state a claim for copyright infringement because they do not allege the requisite substantial similarity between those works and Lumetrics' protected copyrights. For instance, Lumetrics alleges:

> "Blalock had access to and copied the Copyrighted Software, *made derivative works based on the Copyrighted Software*, and is distributing copies of *those works* without authorization."

(Dkt. 1 at ¶ 50) (emphasis added).

In other words, Lumetrics' actual allegations involve much more than the copying and distributing of "bootleg" or "literal" copies of the software. Nowhere in the complaint does Lumetrics even use the words "bootleg" or "literal" copies. Instead, Lumetrics alleges that Blalock made "derivative works based on the Copyrighted Software" and distributed those derivative works. (*Id.*). The complaint alleges that Blalock spent months after allegedly leaving his employment with Lumetrics to develop a competing product (thus suggesting that the focus of Lumetrics' claims is on the prototype developed by Blalock and not the simple "bootleg" copying of software).

Moreover, the complaint is littered with repeated references to alleged infringement with respect to the Bristol 157 Series devices. (*Id.* at ¶¶ 33–46). Lumetrics contends that much of Blalock's argument seems to be "directed to an imaginary complaint that he wishes Lumetrics had filed against Bristol" and that contrary to

Blalock's arguments, this "case is about Mr. Blalock and his actions." (Dkt. 25 at 11). This argument seemingly ignores the expansive allegations contained in the complaint about Bristol and its 157 Series devices. For example, the complaint alleges that "Bristol did not possess the skills necessary to develop the Bristol 157 Series devices until Blalock was hired" (Dkt. 1 at ¶ 38), that the Bristol 157 Series devices "do not use technology that Bristol was familiar with before Bristol hired Blalock" (*id.* ¶ 41), and that the Bristol 157 Series was launched "relying on Lumetrics' Copyrighted Software and trade secrets that Blalock obtained while he was an officer of Lumetrics" (*id.* ¶ 42). Lumetrics alleges that "Blalock knowingly copied and used Lumetrics' Copyrighted Software to develop his own interferometric thickness measuring device, which was later integrated into the 157 Series devices." (*Id.* ¶ 46). As part of its sole cause of action for copyright infringement, Lumetrics alleges that Blalock acted "in concert with his employer Bristol" (*id.* at ¶ 51), and it seeks injunctive relief against Blalock and "all persons in active concert or participation" with him (*id.* at ¶ 53).

Yet, there are no allegations that the Bristol 157 Series devices (or the software contained in those devices) are substantially similar to Lumetrics' protected works. Even Lumetrics concedes that substantial similarity would be required with respect to any claim involving the Bristol 157 Series devices. (Dkt. 25 at 12).

Although Lumetrics' opposition papers seek to limit the reach of its claims to just a bootleg copying by Blalock, Lumetrics did not file a motion seeking leave to amend its complaint to narrow the focus of its claims. Under the circumstances, it would be neither possible nor appropriate for the Court to attempt to carve out a properly stated copyright infringement claim from the rest of the allegations in the complaint. Because Lumetrics has attempted to do far more than just assert a claim against Blalock for bootleg copying of software, and those expansive allegations concerning derivative works created by Blalock and the Bristol 157 Series devices lack any allegations of substantial similarity, the complaint fails to state a claim for copyright infringement.

## V. CONCLUSION

For the foregoing reasons, Blalock's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted without prejudice. As a result, Lumetrics' motion for expedited discovery is denied without prejudice as moot, and Bristol's motion to intervene is denied without prejudice as moot.

SO ORDERED.